**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>MONICA STERLING,</td><td>*</td><td></td></tr>
<tr><td>    Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Case No.: PWG-12-3193</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>OURISMAN CHEVROLET</td><td>*</td><td></td></tr>
<tr><td>    OF BOWIE INC., *et al.*,</td><td>*</td><td></td></tr>
<tr><td>    Defendants.</td><td>*</td><td></td></tr>
</table>

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OPINION

This Memorandum Opinion addresses the Motion to Dismiss that Defendants Ourisman Chevrolet of Bowie, Inc., Henry Hylton, William Taliaferro, and Lew Gilinsky filed, ECF No. 5; Plaintiff Monica Sterling's Opposition, ECF No. 12; and Defendants' Reply, ECF No. 14. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendant's Motion is GRANTED IN PART and DENIED IN PART. Defendants must file their Answers no later than May 16, 2013, at which time the Court will enter a Scheduling Order and schedule a Rule 16 conference call with the parties to discuss further pretrial proceedings. This Memorandum Opinion disposes of ECF Nos. 5, 12 and 14.

## I.　　BACKGROUND[1]

Plaintiff went to Ourisman's dealership on September 11, 2012 to trade in her 2007 Chevrolet Trailblazer for a different vehicle. Compl. ¶¶ 5, 10-11, ECF No. 1. She test drove a

---

[1] For purposes of considering Defendants' Motion, this Court accepts the facts that Plaintiff alleged in her Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

"fully loaded" Chevrolet Traverse and met with Ourisman employees, including Gilinsky, Hylton, and Taliaferro. *Id.* ¶¶ 7-9, 13-16. Gilinsky suggested a monthly payment of $650, Plaintiff said that it was acceptable to her, and Hylton met with Plaintiff regarding the necessary paperwork. *Id.* ¶¶ 17-19, 31. Hylton said that Plaintiff would have to provide her three most recent bank statements and a copy of Schedule C from her tax return, although she could sign the contract prior to producing the documents. *Id.* ¶¶ 19-20. He then informed her that the cost of the Traverse was $10,000 more than Ourisman originally quoted her, but that she could purchase a Chevrolet Equinox instead for the quoted amount. *Id.* ¶¶ 22, 24. Plaintiff left the dealership without purchasing a vehicle. *Id.* ¶¶ 25-27.

She returned with the requested documents the next day and test drove the Equinox. *Id.* After the test drive, Hylton informed Plaintiff that the Equinox would cost $800 per month, rather than the $650 per month he quoted her the day before. *Id.* ¶ 31. Plaintiff said that she would only pay $650 per month. *Id.* ¶¶ 32-33. Another employee named Robert later told Plaintiff that Ourisman could sell her the Equinox for $650 per month as expected, *id.* ¶ 38, and that she would have to make a deposit of $1,000 that day and a payment of $800 on September 20, 2012 before the transaction would be final, *id.* ¶¶ 40-41. Plaintiff signed a "Vehicle Sales Contract" and a "Retail Installment Sale Contract," agreeing to purchase the Equinox and trade in her own vehicle, and agreeing to the financing terms. *Id.* ¶¶ 44-45.

Approximately sixteen days later, Taliaferro called Plaintiff and told her for the first time that she had to sign an IRS form 4506-T, which Plaintiff did. *Id.* ¶¶ 49, 51, 55. About five days later, Taliaferro informed Plaintiff that Ourisman was unable to secure financing for her and therefore she needed to return the Equinox. *Id.* ¶ 59. Plaintiff returned the vehicle, *id.* ¶ 64, and Taliaferro said that Ourisman would "mail her the difference" left from her deposit, based on

"how much Ms. Sterling had driven the Equinox." *Id.* ¶¶ 65-66. Taliaferro loudly commented, "in the presence of third parties, . . . about how Ms. Sterling needed to deal with her credit, and get in touch with GMAC to straighten out her financing." *Id.* ¶ 68.

Plaintiff's Trailblazer "had been sold, driven 100 miles, did not start properly, and the 'check engine' light was on," and Ourisman replace the tires, such that they were no longer under warranty. *Id.* ¶¶ 74-76, 94. Additionally, Plaintiff incurred late fees for not making payments on the Trailblazer while Defendants had it. *Id.* ¶ 95. Ourisman had to buy the Trailblazer back to return it to her, *id.* ¶ 74-76, and told Plaintiff that she owed them $1,400, *id.* ¶ 78. After Plaintiff complained, Gilinsky told Plaintiff verbally, and in writing on the back of his business card, that Ourisman would return all of her money within four days. *Id.* ¶¶ 91-92.

Ourisman did not return Plaintiff's deposit. *Id.* ¶ 93. Plaintiff filed a Complaint against Defendants and Ally Financial, Inc.,[2] alleging various statutory claims, as well as the common law torts of fraud and negligence. Compl. 1.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must

---

[2] Plaintiff later voluntarily dismissed Ally Financial, Inc. from the case. *See* ECF No. 13.

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

According to Plaintiff, this case "is essentially a simple case of fraud," with fraudulent behavior underlying each of the statutory claims. Pl.'s Opp'n 1. Plaintiff's fraud allegations must meet the "heightened pleading standard under Rule 9(b)." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation.

*Id.* (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013).

## III.    DISCUSSION

### A.  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count I)

"'The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. Section

1692e forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct.'" *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir.1996) (quotation omitted)). Plaintiff claims that Defendants violated 15 U.S.C. §§ 1692d, 1692e(2) and (10), and 1692f.[3]  To state a claim for relief under any of these provisions of the FDCPA, Plaintiff must allege that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart*, 859 F. Supp. 2d at 759-60 (citation omitted); *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, No. ELH-12-752, --- F. Supp. 2d ---, 2013 WL 932525, at *17 (D. Md. Mar. 11, 2013) (citing 15 U .S.C. § 1692).  Defendants contend that "Plaintiff has not alleged facts sufficient to support a finding that any Defendant is a *debt collector* as defined in the FDCPA."  Defs.' Mem. 7.

A "debt collector" is "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  Simply put, "a party qualifies as a debt collector where it operates a business that has the principal purpose of collecting debts or regularly attempts to collect debts that are owed to another."  *Goia v. CitiFinancial Auto*, No. 12-12639, 2012 WL 6013206, at *6 (11th Cir. 2012).  "Notably, "the FDCPA does not apply to any person collecting

---

[3] Section 1692d provides that "[a] debt collector may not engage in any condct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

on a debt that it 'originated.'" *Ademiluyi*, 2013 WL 932525, at *13 (quoting 15 U.S.C. § 1692a(6)(F)(ii)).

Here, Plaintiff has not tried to allege, nor could she succeed in alleging, that any of Defendants is operating a business the principal purpose of which is to collect debts. Rather, Defendants are a car dealership and its employees; the principal purpose of their business is to sell cars. Nor had Plaintiff alleged that any of Defendants regularly collects debts due to another. Plaintiff points to ¶ 102 of the Complaint and insists that it "specifically states how Defendants violated the FDCPA as debt collectors," Pl.'s Opp'n 5, but in that Paragraph, Plaintiff quotes the FDCPA and recites alleged acts of Defendants; she does not allege that Defendants are debt collectors.[4] Plaintiff's only claim that Defendants are debt collectors is in ¶ 100 of the Complaint, where she alleges that "Defendants are creditors and debt collectors under 15 U.S.C. § 1692a." This is a "threadbare recital[s] of the elements" of the claim, and the Court is unable

_____

[4] In full, ¶ 102 states:

> Defendants violated 15 U.S.C. § 1692d, which prohibits, "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and 15 U.S.C. §1692e(2), which prohibits, "false representation of— (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," and 15 U.S.C. § 1692e(10), which prohibits, "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," and 15 U.S.C. §1692f, which prohibits, "use[ing] unfair or unconscionable means to collect or attempt to collect any debt[,]" by: (1) consistently using aggressive and demeaning tones as stated in ¶¶'s 31, 34, 59, and 68-70 (2) bait and switch (A) misrepresenting the price of the vehicles as stated in ¶¶'s 14-15, 21-22, 31, and 36, (B) selling a vehicle then requiring it be returned and changing the terms required to keep the vehicle, (3) misrepresenting by saying that (A) the deal was final as long as the husband the signed and the $800 cleared, (B) what she needed to provide as far as documentation, (C) that she did not have the legal right to keep the Equinox and that she was required to return it, (D) that Ms. Sterling owed Defendants certain original and subsequent amounts, (E) that they intended to sell the Equinox under the original terms, and (F) that the financing would take care of itself.

to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678-79 (2009). Moreover, a car dealership is, "[a]t most," a creditor—indeed, as noted, Plaintiff categorizes Defendants as "creditors," Compl. ¶ 100—and "'creditors are not liable under the FDCPA.'" *Eley v. Evans*, 476 F. Supp. 2d 531, 534 (E.D. Va. 2007) (quoting *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003)).

Nonetheless, Plaintiff insists that "Ourisman is a debt collector under the FDCPA because it acts as a debt collector for its intended assignees." Pl.'s Opp'n 4. However, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include . . . an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698)); *see Martin v. Westlake Fin. Servs.*, No. 11-CV-6345 (CBA)(RML), 2012 WL 1301200 (E.D.N.Y. Apr. 16, 2012) (dismissing claim against Westlake, the company that provided the loan for plaintiff's vehicle purchase, for failure to state a claim under the FDCPA because "any assignment of rights between the dealership and Westlake occurred before any default on the debt, in which case Westlake is still not a debt collector"). Even if Ourisman collected debts for its "intended assignees," Pl.'s Opp'n 4, Plaintiff has not alleged that Ourisman assigned a debt to an assignee, let alone that it assigned, or intended to assign, a debt that was in default. Therefore, none of Defendants is a debt collector, such that Plaintiff has failed to state a claim under the FDCPA for which relief can be granted. *See Stewart v. Bierman*, 859 F. Supp. 2d at 759-60. Count I is DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

**B. Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count II)**

RICO "'is concerned with eradicating organized, long-term, habitual criminal activity,'" not "'all instances of wrongdoing.'" *Mitchell Tracey v. First Am. Title Ins. Co.*, No. WDQ-12-1329, 2013 WL 1296390, at *6-7 (D. Md. Mar. 28, 2013) (quoting *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (internal quotation marks omitted)). Courts, therefore, must "'exercise caution' to ensure that 'RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions,'" while at the same time "read[ing] the terms of the statute 'liberally' to 'effectuate its remedial purposes.'" *Id.* (quoting *U.S. Airline Pilots*, 615 F.3d at 317 (internal quotation marks omitted)).

Plaintiff claims that Defendants violated 18 U.S.C. § 1962(c). Compl. ¶ 118. Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim for relief based on a violation of § 1962(c), Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), or

> (1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the defendants used, in the operation of the enterprise, income derived from the collection of unlawful debt, (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt, (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with the business of lending money at a usurious rate, and (8) the usurious rate was at least twice the enforceable rate.

*Day v. DB Capital Group, LLC*, No. DKC-10-1658, 2011 WL 887554, at *13 (D. Md. Mar. 11, 2011) (citation and quotation marks omitted). The elements of RICO claims for collection of unlawful debt are largely the same as for RICO claims for racketeering activity; "[t]he[] key additional requirement is simply the allegation of a collection unlawful debt and the use of proceeds from that collection to further the enterprise." *Id.* In both instances, the enterprise must affect interstate commerce. *See id.*; *Martin v. JTH Tax, Inc.*, No. 9:10-cv-03016-DCN, 2013 WL 1282224, at *4 (D.S.C. Mar. 27, 2013). Defendants contend that Plaintiff failed to allege sufficiently that "any Defendant was engaged in an enterprise affecting interstate or foreign commerce, engaged in a 'pattern of racketeering activity', or engaged in the collection of an 'unlawful debt.'" Defs.' Mem. 9.

### 1. Conduct of an enterprise affecting interstate commerce

Defendants argue that Plaintiff does not make "any factual allegations that the Defendants were engaging in 'interstate or foreign commerce.'" Defs.' Mem. 11-12. In her Complaint, Plaintiff states twice that Defendants engaged in interstate commerce: She claims that Defendants violated § 1962(c) "by being employed by or associated with an enterprise engaged in activities *which affect interstate commerce* through a pattern of racketeering activity or the collection of an unlawful debt," Compl. ¶ 118 (emphasis added), and that "Defendants engaged in 'racketeering activity' by . . . the Defendants[']  actions relating to . . . *interstate transportation* of stolen motor vehicles and property," *id.* ¶ 117 (emphasis added). Additionally, in her Opposition, Plaintiff insists that "all car dealerships sell vehicles that have the ability to and presumably do travel in and out of the state in which they are purchased," and "it is not reasonable to presume that Ourisman prohibits sales to out of state buyers." Pl.'s Opp'n 5-6. Yet a plaintiff cannot state "a plausible claim for relief" through presumptions, *see Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678-79 (2009), as a count without "a short and plain statement" of the relevant facts is utterly lacking in the factual content that would enable the Court to draw any inferences as to the defendant's liability. *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 663. Further, Plaintiff's two references to interstate commerce are only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. These references are not sufficient to survive a motion to dismiss because, while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Consequently, Plaintiff has not pleaded sufficiently that Defendants engaged in interstate commerce.

### 2. *Pattern of racketeering activity*

According to Defendants, Plaintiff does not allege any facts "supporting a claimed 'racketeering activity'" or "a 'pattern of racketeering activity." Defs.' Mem. 10-11. "Racketeering activity" is defined at § 1961(1) as any one of various indictable offenses, including numerous statutory offenses involving fraud. Plaintiff claims that Defendants engaged in, *inter alia*, "mail fraud, wire fraud, [and] financial institution fraud," Compl. ¶ 117, which qualify as racketeering activity. Assuming, *arguendo*, that Plaintiff alleges facts with sufficient particularity for the Court reasonably to infer that Defendants engaged in racketeering activity through acts of fraud, I will consider whether there was a "pattern of racketeering activity."

To allege that Defendants engaged in a "pattern of racketeering activity," Plaintiff must plead sufficient facts to allege "'continuity plus relationship,'" i.e., that Defendants engaged in at least two related offenses that constitute racketeering activities, and that those activities "'amount to or pose a threat of continued criminal activity.'" *U.S. Airline Pilots*, 615 F.3d at 318

(quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Plaintiff describes Defendants' alleged illegal actions with regard to Plaintiff's purchase of the Equinox, Compl. ¶ 117,[5] and alleges that Defendants' activities occurred "th[r]ough periods of repeated past or present conduct and project into the future a threat of repetition." *Id.* ¶ 118. Plaintiff argues that, through these assertions, she sufficiently alleges a pattern of racketeering activity. Pl.'s Opp'n 6. The alleged racketeering activities are related, as they allegedly occurred in conjunction with Plaintiff's attempt to purchase a vehicle from Defendants. *See* Compl. ¶ 117; *H.J. Inc.*, 492 U.S. at 240 (stating that a relationship exists when the acts "'have the same or similar purpose, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events'") (citation omitted).

With regard to whether there is continuity, it is noteworthy that, "'while two acts are necessary, they may not be sufficient,'" *H.J. Inc.*, 429 U.S. at 237 (quoting *Sedima*, 437 U.S. at 496 n.14), as "'proof of two acts, without more, does not establish a pattern,'" *id.* at 238 (quoting 116 Cong. Rec. 18940 (1970) (statement of Sen. McClellan)). Rather, Plaintiff must demonstrate either "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. For closed-ended continuity, the related racketeering activities must "extend[] over a substantial period of time," i.e., a period of

---

[5] In full, Compl. ¶ 117 states:

> Under 18 U.S.C. § 1961(1), Defendants engaged in "racketeering activity" by extorting Ms. Sterling to pay higher rates than originally agreed upon through threatening and aggressive behavior as exhibited in ¶¶'s 31, 34, 59, and 68-70, and charging unfairly high prices through a bait and switch scheme exhibited in ¶¶'s 14-15, 21-22, 31, and 36, as well as the Defendants actions relating to extortionate credit transactions, mail fraud, wire fraud, financial institution fraud, obstruction of justice, interference with commerce or extortion, racketeering, engaging in monetary transactions in property derived from specified unlawful activity, interstate transportation of stolen motor vehicles and property, and trafficking in certain motor vehicles.

time greater than "a few weeks or months." *Id*. at 242. The Supreme Court, "[w]ithout making any claim to cover the field of possibilities," has said that open-ended continuity exists where "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or "the predicate acts or offenses are part of an ongoing entity's regular way of doing business" or "the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or RICO 'enterprise.'" *Id*. at 242-43.

The acts at issue here certainly did not "extend[] over a substantial period of time," *see id.* at 242; Plaintiff began negotiations with Defendant on September 11, 2012 and returned the vehicle on October 6, 2012. Compl. ¶¶ 10, 61. Therefore, there is no closed-ended continuity. *See H.J. Inc.*, 429 U.S. at 242. Further, the Fourth Circuit has noted that open-ended continuity is not present when the fraudulent acts occur in an isolated sale. *See GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 549-50 (4th Cir. 2001) ("The courts . . . have repeatedly recognized that . . . schemes involving fraud related to the sale of a single enterprise do not constitute, or sufficiently threaten, the 'long-term criminal conduct' that RICO was intended to address. Where the fraudulent conduct is part of the sale of a single enterprise, the fraud has a built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity." (internal citations omitted)). Here, the acts Plaintiff describes pertain only to Defendants' attempted sale to Plaintiff; Plaintiff does not claim that Defendants "have engaged in a similar scheme involving any other [customer]." *See id.* Nor does Plaintiff allege that Defendants regularly conducted business the way they purportedly did with her. *See H.J. Inc.*, 429 U.S. at 242-43. Thus, Plaintiff has failed to state a RICO claim based on a pattern of racketeering activity. *See Iqbal*, 556 U.S. at 678-79.

*3. Collection of unlawful debt*

A violation of 18 U.S.C. § 1962(c) may occur through collection of an unlawful debt, rather than through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). Defendants contend that Plaintiff fails to state a RICO claim based on collection of unlawful debt, insisting that Plaintiff did not incur any debt because "financing was never accepted." Defs.' Mem. 9. Alternatively, they argue that if there was a debt, it was not unlawful because Defendants' efforts to obtain financing for Plaintiff were not the type of "'gamble' . . . that violates any law as required by the statute," *id.*, and Defendants did not "lend[] money at a rate usurious under the law as required to constitute an 'unlawful debt,'" *id.* at 10.

Defendants cite the statutory definition of "unlawful debt." *Id.* at 9. RICO defines "unlawful debt" as

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate[.]

18 U.S.C. § 1961(6). Although she acknowledges this definition, Plaintiff asserts: "That the case law regarding what constitutes an unlawful debt under RICO is sparse, does not mean that its definition is limited." Pl.'s Opp'n 6. Without citing any authority, Plaintiff insists that "'unlawful debts' are those arising under illegal activity," *id.*, and that the debt she incurred when she signed the sales contract with financing terms was unlawful because "it arose under illegal activity pertaining to fraud," *id.* at 7.

Plaintiff does not allege that the loan rate was unreasonable, let alone usurious. Instead, her claim is based on the "gambling activity" in which, in Plaintiff's view, Defendants engaged,

"in so far as they were making a gamble that the debt could be assigned by GMAC even though the Defendants did not obtain the proper documentation from Ms. Sterling." Compl. ¶ 116. However, Plaintiff does not allege in her Complaint that this "gambling activity" was in violation of any law. Therefore, assuming *arguendo* that Plaintiff incurred a debt, the debt did not stem from illegal gambling activity and thus was not "unlawful debt" under RICO. *See* 18 U.S.C. § 1961(6). Plaintiff has failed to state a RICO claim based on collection of unlawful debt. *See Day*, 2011 WL 887554, at *13; *Iqbal*, 556 U.S. at 663. Consequently, Plaintiff's allegation of a RICO violation lacks the facts necessary to plead this cause of action. *See Iqbal*, 556 U.S. at 678-79. Count II is DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

### C. Truth in Lending Act ("TILA"), 15 U.S.C. 1601 *et seq.* (Count III)

Congress passed TILA "'to assure a meaningful disclosure of credit terms'" by "'mandat[ing] that creditors make specific disclosures before extending credit to consumers.'" *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 682 (D. Md. 2010) (quoting *Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 Fed. App'x 622, 626 (4th Cir. 2008)). TILA requires the disclosure of "[t]he identity of the creditor," "[t]he 'amount financed,'" "the consumer's right to obtain, upon a written request, a written itemization of the amount financed," "[t]he 'finance charge,'" the total amount of all payments, and "the 'total sale price,'" as well as "[d]escriptive explanations" of a number of the terms, and late charges, among other terms. 15 U.S.C. § 1638(a). Thus, to state a claim for relief under TILA, Plaintiff must allege that Defendants failed to make one or more of these required disclosures before they extended credit to Plaintiff. *Green v. Hebron Sav. Bank*, No. RDB-08-3391, 2010 WL 118370, at *3 (D. Md. Jan. 7, 2010).

Plaintiff claims

Defendants violated 15 U.S.C. § 1638 by (1) claiming afterwards that Ms. Sterling's purchase of the Equinox was contingent upon a financing issue; (2)

failing to tell Ms. Sterling initially that the Defendants believed that the purchase of the Equinox was contingent upon a financing issue; (3) misrepresenting the documentary requirements of the financing; (4) demanding that Ms. Sterling return the Equinox; (5) misrepresenting that certain documentary requirements were necessary; (6) failing to offer the assignment for the face value of the installment sales contract; (7) demanding that Ms. Sterling pay for any costs associated with the Defendants[,] failure to "obtain" financing for Ms. Sterling; (8) refusing to return the deposit; (9) failing to return the deposit; (10) providing meaningless and/or illusory credit terms (creditor disclaimer purporting condition of assignment); and (11) subjecting Ms. Sterling to the dealer's unilateral modification or revocation of contract, as are all exhibited in the Pertinent Facts exhibited in ¶¶'s 10-96.

Compl. ¶ 126. Defendant is correct that none of these "acts or omissions which [Plaintiff] alleges establish[es] a violation of the TILA." Defs.' Mem. 13. Moreover, Plaintiff concedes that, as Defendant contends, the retail installment sales contract that Plaintiff and Ourisman signed complies with the requirements of § 1638. Pl.'s Opp'n 7; Defs.' Mem. 13.

Nonetheless, Plaintiff insists that Defendants violated TILA because, in her view, the contract's compliance "is rendered completely nugatory by the fact that Defendants did not intend to lend at those terms, unless the loan could be assigned." Pl.'s Opp'n 7. According to Plaintiff, the facts alleged in ¶ 126 "each represents a misrepresentation of the, 'amount financed,' the, 'finance charge,' the, 'total payment,' and the, 'payment schedule.'" *Id*. However, Plaintiff fails to claim in her Complaint that the terms of the contract were misrepresentations such that Defendants did not, in fact, make the required disclosures. Perhaps, if Plaintiff's Complaint contained the facts she contends it sets forth, the Court could infer defendant's liability under TILA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Yet it does not, and therefore, Plaintiff fails to state a claim for relief under TILA. *See id.* at 678-79. Count III is DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

### D. Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (Count IV)

The FCRA, which "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy," provides for civil liability for anyone who fails to provide the required notice to a consumer against whom an adverse action is taken based on the consumer's credit report. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52-53 (2007). Section 1681m requires a person taking such "adverse action" to give the consumer his or her credit score in writing or electronically and to provide, by "oral, written, or electronic" means: "notice of the adverse action"; contact information for the consumer reporting agency; a statement that it was not the agency's decision to take the adverse action; and "notice of the consumer's right . . . to obtain . . . a free copy of the consumer report" and to dispute the report. 15 U.S.C. § 1681m(a). Plaintiff claims that "Defendants violated 15 U.S.C. § 1681m by failing to provide the required disclosures when they demanded that Ms. Sterling return the Equinox, take back the Trailblazer, and pay them money."[6] Compl. ¶ 134. Defendants argue that Plaintiff fails to state a claim under § 1681m because, rather than alleging that she was denied credit based on her credit report, "Plaintiff alleges that her financing was denied *because of the status of her 2011 tax return* (which was not filed)." Defs.' Mem. 17 (emphasis added). Defendant cites Paragraphs 49-59 of Plaintiff's Complaint, in which Plaintiff claims that, more than two weeks after she purchased the Equinox, Defendants required Plaintiff to sign an IRS form, which Plaintiff signed, and thereafter, Plaintiff was denied financing and asked to return the vehicle. Compl. ¶¶ 49-59.

---

[6] Plaintiff also claims that "Defendants violated 15 U.S.C. § 1681a(k) by acting adversely to the interest of Ms. Sterling . . . ." Compl. ¶ 132. However, § 1681a is the definitional section of the FCRA, and Plaintiff cannot state a claim for a violation of this section. *Cf.* 15 U.S.C. §§ 1681n & 1681o (providing for civil liability).

It is true that Plaintiff does not state specifically that she was denied credit based on her credit report, but she also does not state that she was denied credit based on her failure to file her tax return. *See id.* Plaintiff alleges that Defendants obtained her credit report, then learned that she failed to file her 2011 tax return, and then denied her credit without providing the disclosures required pursuant to § 1681m. *See id.* ¶¶ 18, 56, 59 & 134. From this, the Court may infer reasonably that Defendants took the "adverse action" of denying credit to Plaintiff, *see* 15 U.S.C. § 1681a(k)(1)(A), based on either her credit report or her failure to file her tax return. *See Iqbal*, 556 U.S. at 663. Additionally, Plaintiff sufficiently alleges that Defendants violated § 1681m by failing to provide the required disclosures. See Compl. ¶ 134. Therefore, this FCRA claim is facially plausible and survives Defendants' Motion to Dismiss. *See Iqbal*, 556 U.S. at 663.

Plaintiff also claims that Defendants violated 15 U.S.C. § 1681b(f), which provides that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section, and . . . the purpose is certified . . . by a prospective user of the report[.]" Relevantly, § 1681b(a) authorizes the consumer reporting agency to provide a consumer report as per "the written instructions of the consumer to whom it relates" and, upon reasonable belief, to someone who "intends to use the information" with regard to extending credit to the consumer or who "has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(2), (a)(3)(F)(i). According to Plaintiff, Defendants obtained her credit report "without themselves ever intending to extend credit." Compl. ¶ 136. However, as Defendants note, they had a legitimate purpose for obtaining Plaintiff's credit report: They obtained the report "to further the business transaction that she initiated," i.e., the purchase of the Equinox, by securing financing for her purchase.

Defs.' Mem. 15-16; *see* 15 U.S.C. § 1681b(a)(3)(F)(i), (f).    Therefore, Plaintiff fails to state a claim for a violation of this provision of the FCRA.  *See* Fed. R. Civ. P. 8(a)(2).

**E.  Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* (Count V)**

The  ECOA  prohibits  creditors  from  discriminating  "'with  respect  to  any  credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age,'" and "establishes certain notification requirements that a creditor must satisfy."  *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *6 (D. Md. Jan. 22, 2013); (quoting *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002) (quoting 15 U.S.C. § 1691(a)(1))).  Specifically, creditors must "furnish applicants with a written 'statement of reasons'  for  any  'adverse  action'  taken,  including  a  refusal  to  grant  credit  substantially  as requested by the applicant," and must "advise applicants of non-adverse actions, although such notices need not include a statement of reasons."  *Martin v. Q & A Enters.*, No. 3:11CV654-HEH, 2012 WL 380065, at *4 (E.D. Va. Feb. 6, 2012); *see* 15 U.S.C. § 1691(d) ("(1)Within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. . . .").  A creditor need not discriminate to violate the ECOA; failure to provide the required notification is an ECOA violation in and of itself.  *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2012 WL 3985285, at *4 (D. Md. Sept. 7, 2012).  15 U.S.C. § 1691e provides for civil liability for failure to comply with the ECOA.

Plaintiff claims that "Defendants violated 15 U.S.C. § 1691(d) by failing to provide Ms. Sterling with the required written notices of their adverse actions."  Compl. ¶ 142.  Defendants do not contest whether Defendants complied with the ECOA notice requirements, but rather

argue that Plaintiff fails to state a claim under the ECOA because Defendants "are not 'creditors' for purposes of the notice provision of the ECOA." Defs.' Mem. 22.

For purposes of the ECOA notice requirement, a creditor is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit." 15 U.S.C. § 1691a(e). Creditors must report their adverse actions if they "'regularly participate[ ] in a credit decision.'" *Martin*, 2012 WL 380065, at *5 n.7 (quoting 12 C.F.R. § 202.2(1)). A dealership may be, but is not necessarily, a creditor under this provision. *See id.*

> [If] ". . . the automobile dealer only accepts applications for credit and refers those applications to another creditor who makes the credit decisions—for example, where the dealer does not participate in setting the terms of the credit or making the credit decision—the dealer is subject only to" the ECOA's prohibitions against discrimination and discouragement, and not to the Act's notice-of-adverse-action provision. Equal Credit Opportunity, 68 Fed. Reg. 13,144, 13,155 (Mar. 18, 2003) (to be codified at 12 C.F.R. pt. 202). . . .

*Id.*

In this regard, *Martin v. Q & A Enterprises* is informative. There, the plaintiff sought to purchase a car from a dealership, Global. 2012 WL 380065, at *1. He applied for credit, and it appears that Global "solicit[ed] offers" but was not otherwise "directly involved in setting the terms of any lender's proposed financing package." *Id.* However, the dealership "appear[ed] as the 'Creditor-Seller' on [the customer's] RISC," *id.* at *5, which "set[] forth financing terms." *id.* at *1. The plaintiff purchased the car and one week later learned that he had not been approved for the loan. *Id.* at *2. He brought suit against Global and the lenders that Global had approached, alleging, *inter alia*, a violation of the notice provision of the ECOA. *Id.* at *3. On the defendants' motion to dismiss, the court noted that "[a]utomobile dealers such as Global frequently offer to coordinate financing on a customer's behalf," acting "merely as 'an 'arranger' or "referrer" with regard to credit.'" *Id.* at *5 (quoting *Treadway v. Gateway*

*Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) (citation omitted)). Yet, the court also observed that, "[i]n rarer instances, . . . the dealer may itself offer to provide a purchase loan." *Id*. On that basis, the court identified "the pivotal question" as "whether Global itself entered into a financing agreement that displaced the obligations of other creditors . . . to advise Martin of their decision on his application." *Id*. The court said that the fact that a dealer is listed as the "'Creditor–Seller'" on the RISC "does not conclusively signify that [the dealer] agreed to finance [the customer's] loan, or even that [the dealer] acted as a 'creditor' for purposes of the ECOA." *Id*. at *5. Therefore, the court could not "conclude [from the pleadings] that Global acted as a lender in its interactions with Martin, instead of merely a third-party 'arranger' or 'referrer,'" and thus denied the motion to dismiss because it could not answer "the pivotal question" to absolve any of the defendants from liability. *Id*.

Here, Plaintiff claims that Ourisman appears as the "Creditor-Seller" on the RISC, Compl. ¶ 45, and that Defendants negotiated monthly payments with her and discussed the paperwork necessary for financing, asking her "whether she would take the vehicle if they could get her a payment of a certain amount per month," and "explain[ing] that financing usually only required the three (3) most recently monthly bank statements, but now they were requiring bank statements plus a copy of Schedule C," *id*. ¶¶ 17, 19; *see id.* ¶¶ 20-41. Yet Plaintiff also claims that Defendants approached lenders to finance Plaintiff's purchase, telling her that Taliaferro "would see what he could do about either forcing GMAC to take the financing or finding an alternative source of financing," and then that "they were unable to get the financing through anywhere." Compl. ¶¶ 57, 59. The only reasonable inference the Court can make on these facts is that Defendants acted "merely as a third-party 'arranger' or 'referrer,'" and not a creditor. *See Martin*, 2012 WL 380065, at *5-6. Therefore, none of Defendants is a creditor for purposes of

the ECOA notice provision, such that Plaintiff has failed to state a claim under the ECOA for which relief can be granted. *See id.*; 15 U.S.C. § 1691a(e). Count V is DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

### F. Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.* (Count VI)

The MCPA provides that "'a person may not engage in any unfair or deceptive trade practice,'" such as a "false or misleading statement[]," in relation to "'[t]he extension of consumer credit' or the 'collection of consumer debts.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013) (quoting Com. Law § 13-303). To state a claim for a violation of the MCPA through "false or misleading statements," Plaintiff "must allege not only that [Defendants] made a false or misleading statement, but also that the statement caused [Plaintiff] an actual loss or injury." *Id.*

Plaintiff claims that Defendants "committed unfair and/or deceptive trade practices," in violation of Com. Law § 13-303,

> by making statements that had the capacity, tendency, and effect of misleading Ms. Sterling into believing that she had been approved for financing, when Defendants did not intend to finance, or should have known that Ms. Sterling would eventually not be financed, then making statements misleading Ms. Sterling into believing that she had not been financed when [she] actually had been, and that she was required to return the Equinox, and that she could not keep the Equinox and continue to make payments; and then made misleading statements about Ms. Sterling being responsible for the financing not being approved; made misleading statements about Ms. Sterling being required to pay Defendants more money, as exhibited as exhibited in ¶¶'s 59, 64-70, 78-79, 88, and 93-96."

Compl. ¶ 148.

Defendants argue that Plaintiff's MCPA claim, which involves fraud, should be dismissed because Fed. Civ. P. 9(b) "requires that the plaintiff identify the circumstances constituting fraud with *particularity*," and "[t]he Complaint fails, on its face, to allege which

Defendant made the alleged 'statements that had the capacity, tendency, and effect of misleading Ms. Sterling' or the 'statements misleading Ms. Sterling.'" Defs.' Mem. 22-23 (quoting Compl. ¶ 148). Plaintiff insists that she has provided the requisite particularity in the paragraphs referenced in Paragraph 148 of her Complaint. Indeed, Plaintiff states the dates and approximate times of all of her interactions with Defendants, Compl. ¶¶ 10, 25, 26, 46 & 61, and she states that the in-person interactions occurred on Ourisman's lot and in Ourisman's building, *id.* ¶¶ 10-46, 61-92. Additionally, she identifies the speaker at each stage of the negotiations and for each interaction Plaintiff had with Defendants. *See id.* ¶¶ 10-92. Also, Plaintiff alleges that, as a result of these statements, Defendants obtained Plaintiff's vehicle, which they sold before insisting that she buy it back. *Id.* ¶¶ 42-47, 94, 95. Thus, in her fraud allegations underlying this Count, Plaintiff has met Rule 9(b)'s heightened pleading standard by including "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Piotrowski*, 2013 WL 247549, at *5 (quotation marks and citations omitted). Further, Defendants' statements misled Plaintiff to believe that her purchase of the Equinox was final and not contingent on any additional financing arrangements. Compl. ¶¶ 40-47. Plaintiff alleges sufficiently that Defendants made a false or misleading statement. *See Piotrowski*, 2013 WL 247549, at *10.

Defendants also contend that "Plaintiff does not allege facts to show that she suffered any actual injury as a result of the alleged 'misleading' facts." Defs.' Mem. 24. To the contrary, Plaintiff claims that "Defendants replaced the tires on the Trailblazer causing Ms. Sterling to lose a warranty she had on them," Compl. ¶ 94, and that "Ms. Sterling has incurred late fees for the months of September and October for not paying the car note for her Trailblazer," *id.* ¶ 95.

Plaintiff has stated a claim for a violation of the MCPA.  *See Piotrowski*, 2013 WL 247549, at

*10.

### G. Maryland Consumer Debt Collection Act ("MCDCA"),[7] Md. Code Ann., Com. Law § 14-201 *et seq.* (Count VII)

The MCDCA "'prohibits debt collectors from utilizing threatening or underhanded

methods in collecting or attempting to collect a delinquent debt.'"  *Piotrowski v. Wells Fargo*

*Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013) (quoting

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011) (citing Md.

Code Ann., Com. Law § 14–202)).    Com. Law § 14-202(8) provides that a debt collector may

not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

Plaintiff claims that Defendants violated §§ 14-202(3), (5), and (8)[8] of the MCDCA,

which prohibit debt collectors from disclosing information regarding a debtor's reputation if the

collector knows that the information is false, disclosing such information to someone without "a

legitimate business need for the information," and attempting to enforce non-existent rights.

Compl. ¶ 158.  Specifically, she alleges that Defendants violated the MCDCA by

> (A) speaking loudly in the presen[ce] of third parties, without a legitimate
> business need, about Ms. Sterling's personal business regarding financing of the
> Equinox, (B) making exclamations about Ms. Sterling not having been approved
> for financing or for financing being a problem for her, (C) claiming that Ms.
> Sterling had not been approved for financing, (D) requiring Ms. Sterling to return

---

[7] Plaintiff erroneously refers to this Act as the Fair Debt Collections Practices Act, Compl. ¶ 154, rather than the Consumer Debt Collection Act. *See* Com. Law § 14-204 (stating short title of the Act).

[8] Com. Law § 14-202(3) provides that a debt collector may not "[d]isclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false." Com. Law § 14-202(5) provides, with exceptions not relevant here, that a debt collector may not "disclose or threaten to disclose to a person other than a debtor or [the debtor's] spouse . . . information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information."  Com. Law § 14-202(8) provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

> the vehicle, (E) requiring Ms. Sterling to take back the Trailblazer, (F) demanding
> that Ms. Sterling pay additional amounts of money, as exhibited in ¶¶'s 14-15, 21-
> 22, 31, 34, 36, 59, and 68-70.

*Id.* Defendants contend that "Plaintiff has not alleged that any of these Defendants . . . at any time ha[s] been attempting to 'collect a debt' from her," Defs.' Mem. 26; that none of the factual allegations that Plaintiff identifies "concern any attempt to collect a debt," *id.* at 27; and that "Plaintiff does not allege that any Defendant used 'threatening or underhanded methods in collecting or attempting to collect a delinquent debt,'" Defs.' Reply 6 (quoting *Bradshaw*, 765 F. Supp. 2d at 732). Plaintiff counters that a debt existed because "the transaction was final, and Ourisman was in fact the creditor for the financing." Pl.'s Opp'n 10.

A careful review of the Complaint reveals that Plaintiff has not alleged that any Defendant was a debt collector, i.e., "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction," Com. Law § 14-201(b), or that any debt existed, for that matter. Rather, Plaintiff alleges that she was denied financing. Compl. ¶ 59. Therefore, necessarily, she did not incur any debt. It is of no moment whether Ourisman was or would have been "the creditor for the financing," Pl.'s Opp'n 10, because the financing never went through, Compl. ¶ 59. Thus, Plaintiff has failed to state a claim under the MCDCA for which relief can be granted. *See* Com. Law §§ 14-201(b) & 14-202(3), (5) & (8). Count VII is DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

### H. "Violation of Maryland Motor Vehicle[] Administration Orders" (Count VIII)

Plaintiff styled Count VIII as "Violation of Maryland Motor Vehicle[] Administration Orders," and in it she claims that Defendants "engaged in conduct that has been banned by the Maryland Motor Vehicle Administration . . . in its Dealer Bulletin No. D 03-05-01 (March 10, 2005) . . . ." Compl. ¶¶ 161-62. Defendants contend that "Plaintiff's allegation that the

Defendants 'violated the MVA rules and regulations' is simply not an actionable claim." Defs.' Mem. 28. Indeed, "a cause of action is a set of facts which would justify judgment for the plaintiff under some recognized legal theory of relief." Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 2 (MICPEL 4th ed. 2008); *see Pepper v. Johns Hopkins Hosp.*, 680 A.2d 532, 542 (Md. Ct. Spec. App. 1996), *aff'd*, 697 A.2d 1358 (Md. 1997). Plaintiff has not identified either a statutory or a common law theory of relief that this Court recognizes. No cause of action exists in this Court for a violation of a Motor Vehicle Administration Dealer Bulletin. Therefore, Plaintiff has not pleaded facts for which this Court could provide relief, if Plaintiff were to prevail on the merits. As Plaintiff has no cause of action for a violation of a Motor Vehicle Administration Dealer Bulletin, *see* Sandler & Archibald, *supra*, at 1, Count VIII must be DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

## I. Fraud (Count IX)

Plaintiff claims that Defendants are liable for fraud. Compl. ¶¶ 164-70. To state a claim for fraud under Maryland law, Plaintiff

> must allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result.

*Marchese v. JPMorgan Chase Bank, N.A.*, 2013 WL 136427, at *9 (D. Md. Jan. 8, 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L–09–2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (citing *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534 (Md. 1982))). Also, as noted, Plaintiff must meet the "heightened pleading standard under Rule 9(b)," by "'stat[ing] with particularity the circumstances constituting the fraud.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013); *see*

*Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013).  However, Rule 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally."  Fed. R. Civ. P. 9(b).

Plaintiff has alleged successfully all elements of fraud under Maryland law:

(1) Plaintiff claims that Defendants told her that the sale would be final after Plaintiff's second deposit cleared, when in fact the sale was contingent upon financing; Compl. ¶¶ 40-41.

(2) Plaintiff claims that Defendants, with "reckless indifference," had her sign contracts for the purchase and the financing, congratulated her on purchase, had her sign over her vehicle, and sold her vehicle, when they knew that financing might not go through; Compl. ¶¶ 42, 44, 45, 48, 74-76 & 169.

(3) Plaintiff claims that Defendants "were trying to swindle her" and "made these false representations . . . for the purpose of defrauding"; Compl. ¶¶ 67 & 169.

(4) Plaintiff claims that she agreed to sale terms, signed contracts, and believed the sale was final, based on what Defendants told her; Compl. ¶¶ 44-46 & 166.

(5) Plaintiff claims that she lost her tire warranty and incurred late fees during the time she had sold her vehicle to Defendants; Compl. ¶¶ 94-95.

Further, as discussed in detail *supra* in Part III.F, Plaintiff pleaded the circumstances of Defendants' fraudulent acts with particularity.  *See* Compl. ¶¶ 10-92.  Thus, Plaintiff has stated a claim for fraud.  *See* Fed. R. Civ. P. 9(b); *Marchese*, 2013 WL 136427, at *9.

### J. "Negligence & Breach of Fiduciary Duty and Implied Covenants of Good Faith and Fair Dealing" (Count X)

Plaintiff's tenth count is for "Negligence & Breach of Fiduciary Duty and Implied Covenants of Good Faith and Fair Dealing."  Compl. 24 & ¶¶ 171-76.  She claims that "¶'s 10

to 96," i.e., the entire fact section of her Complaint, support this count. Compl. ¶ 175. As best this Court can determine, this count seems to encompass claims for negligence based on fiduciary duty and breach of the implied covenants of good faith and fair dealing. "Rule 10(b) provides that, '[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count.'" *Cunningham v. LeGrand*, No. 2:11-cv-0142, 2011 WL 1807360, at *2 (S.D. W. Va. May 10, 2011) (quoting Fed. R. Civ. P. 10(b)). Rule 10(b) works with Rule 8(a) "'to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . .'" *Id.* (quoting Fikes v. City of Daphne, 79 F.3d 1079, 1082-83 (11th Cir. 1996)). Plaintiff certainly has neither pleaded these claims distinctly nor identified the specific facts supporting each claim. Nonetheless, as Defendant has not stated any difficulty in discerning what Plaintiff claims, this Court will undertake to unpack this count and address each claim.

Preliminarily, I note that breach of the implied covenants of good faith and fair dealing is not an independent cause of action. *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006); *see* Sandler & Archibald, *supra*, at 61. Rather, it "'is merely part of an action for breach of contract,'" as "'[t]he implied duty of good faith "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract."'" *Mount Vernon Props.*, 907 A.3d at 381 (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002) (citation omitted)). Therefore, I construe Plaintiff's tenth count to include claims for breach of contract, based on a breach of the implied covenants of good faith and fair dealing,

and negligence based on fiduciary duty.  *See* Fed. R. Civ. P. 1; *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 792 n.1 (D. Md. 2010) (explaining that Rule 1 instructs the Court "not [to] exalt form over substance"); *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005) (same).

### 1. *Negligence based on fiduciary duty*

To state a claim for negligence based on fiduciary duty, Plaintiff must allege that (1) a fiduciary relationship existed, (2) the fiduciary breached the duty it owed to the beneficiary, and (3) the breach caused harm to the beneficiary.  Sandler & Archibald, *supra*, at 436-38 (noting that no independent cause of action exists for breach of fiduciary duty, but breach of fiduciary duty can be alleged as an element of another cause of action, such as negligence); *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 685 n.46 (Md. Ct. Spec. App. 2012) (stating elements).  Here, the turning point is whether a fiduciary relationship existed between the dealership and Plaintiff, its customer.  "'A fiduciary relationship . . . involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation.'" *Lasater v. Guttman*, 5 A.3d 79, 93 (Md. Ct. Spec. App. 2010) (quoting *Buxton v. Buxton*, 770 A.2d 152, 164 (Md. 2001) (citation and quotation marks omitted)).  It is more than a "'confidential relationship,'" which only requires that one party "'has gained the confidence of the other and purports to act or advise with the other's interest in mind.'"  *Id*. (quoting *Buxton*, 770 A.2d at 164 (citation and quotation marks omitted)).  Examples of fiduciary relationships include "'trustee and beneficiary, guardian and ward, agent and principal, attorney and client, partners in a partnership, corporate directors and their corporation.'"  *Id*. (citation and quotation marks omitted).

Plaintiff claims that Defendants "owed a legal duty including a fiduciary duty" to Plaintiff because they "held themselves out as professionals in the sales industry, deserving of trust and confidence." Compl. ¶ 172. Defendants argue that "it is plain that a salesman and a customer do not have a *confidential* or *fiduciary* relationship," as "[a] confidential relationship may only exist in a business relationship if certain factors above and beyond a typical business relationship" are present. Defs.' Mem. 31. Plaintiff counters, without citing any supporting authority, that, "[r]egardless of what type of relationship the Defendants had with Ms. Sterling, . . . they owed a legal duty of care of that of a reasonable person." Pl.'s Opp'n 10. This is unsurprising because, to the contrary, any duty owed from one party to another arises from the relationship between the parties. *See Buxton*, 770 A.2d at 163-64. Plaintiff has not pleaded sufficient facts to show that a seller and a customer are in a fiduciary relationship or specifically that she was in a fiduciary relationship with Defendants. Nor has this Court's research revealed any case law holding that a car dealership is a fiduciary with regard to its customers. Plaintiff has failed to state a claim for negligence based on fiduciary duty. *See Dynacorp*, 56 A.3d at 685 n.46.

### 2. *Breach of contract*

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). A contract exists where there is "'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013) (quoting

*CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).  Plaintiff states that "[a]t all times during these matters," i.e., the sales negotiations, "Defendants had a duty . . . to act in good faith and to act fairly in their dealings with the Plaintiff."  Compl. ¶¶ 173-74.  Yet Plaintiff has not alleged the existence of a contract[9] governing Defendants' dealings with her. Therefore, Plaintiff also has failed to state a claim for breach of contract based on a breach of the implied covenants of good faith and fair dealing, and Count X must be DISMISSED.  *See* Fed. R. Civ. P. 12(b)(6).

### K.  *Respondeat Superior* (Count XI)

In Count XI, Plaintiff states that "[t]his is an action for declaratory judgment for the purposes of determining a question of actual controversy between the parties," and she "seeks a declaration of her rights with respect to Ourisman under the theory of Respondeat Superior." Compl. ¶¶ 178-79.  Defendants argue that there is no "justiciable controversy" because Plaintiff "is asking for a declaration as to whether she may generally obtain relief directly against Defendant Ourisman 'under the theory of Respondeat Superior.'"  Defs.' Mem. 34.

It is unclear whether Plaintiff seeks a declaratory judgment under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 – 3-415, or the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  The Maryland Declaratory Judgment Act provides:

> Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance,

---

[9] Certainly, Plaintiff refers to contracts in her Complaint: She asserts that she signed a "Vehicle Sales Contract" and a "Retail Installment Sale Contract." Compl. ¶¶ 44-45. Yet Plaintiff bases her contention that Defendants breached covenants of good faith and fair dealing on their behavior during the negotiations, not on the existing contracts.  *Id.* ¶¶ 173-74.

administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

*Id*. § 3-406.  It also provides:

> Any person interested as or through a personal representative, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or beneficiary of a trust, in the administration of a trust, or of the estate of a decedent, a minor, disabled person, or insolvent, may have a declaration of rights or legal relations in respect to the trust or the estate of a decedent . . . .

*Id*. § 3-408.  Neither provision applies here.

Under federal law, a plaintiff seeking declaratory relief "must show that he is in danger of being injured by the opposing party's conduct and that the danger is both 'real' and imminent' and neither 'conjectural' nor 'hypothetical.'"  *Gardner v. Montgomery Cnty. Teachers Fed. Credit Union*, 864 F. Supp. 2d 410, 421 (D. Md. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Lawley v. Northam*, No. ELH-10-1074, 2011 WL 1327652, at *11 (D. Md. Apr. 5, 2011) ("'Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than abstract, hypothetical or contingent questions.'") (quoting *Miller v. Augusta Mut. Ins. Co.*, 157 Fed. App'x 632, 637 (4th Cir. 2005)).  Moreover, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy.'"  *Gardner*, 864 F. Supp. 2d at 421 (quoting *Lyons*, 461 U.S. at 102).  Here, the conduct at issue is past conduct and therefore not the proper subject of a declaratory judgment. *See id*.; *Lyons*, 461 U.S. at 102.  Further, *respondeat superior* is not a separate cause of action.  *See Alford v. Genesis Healthcare*, No. RDB-05-3278, 2007 WL 1073725, at *4 (D. Md. Apr. 9, 2007).  Therefore, Plaintiff has failed to state a claim under either

the Maryland or Federal Declaratory Judgment Act or for *respondeat superior*. *See id.*; Cts. & Jud. Proc. §§ 3-406 & 3-408; *Gardner*, 864 F. Supp. 2d at 421. Count XI is DISMISSED.[10]

## L. Punitive Damages

Plaintiff seeks "punitive damages under the tort theories of liability." Compl. 25. Notably, the only surviving tort claim is for fraud. Defendants argue for dismissal of the punitive damages claim on the basis that Plaintiff does not claim that Defendants acted with "actual malice," as is required to recover punitive damages. Defs.' Mem. 35.

"A party who seeks punitive damages, 'must make a specific demand for that relief in addition to a claim for damages generally, as well as allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with "actual malice."'" *Louers v. Lacy*, No. JKS-10-2292, 2011 WL 2434579, at *3 (D. Md. June 15, 2011) (quoting *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 296 (D. Md. 2005) (quoting *Scott v. Jenkins*, 690 A.2d 1000 (Md. 1997))). "Actual malice" is "'the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully [sic] injure the plaintiff.'" *Beverly v. Vitran Exp., Inc.*, No. CCB-12-1599, 2012 WL 3772579, at *3 (D. Md. 2012) (quoting *Drug Fair of Md., Inc. v. Smith*, 283 A.2d 392, 398 (1971)). Proof of fraud is also proof of actual malice. *Ben-Joseph v. Mt. Airy Transporters, LLC*, 529 F. Supp. 2d 604, 608 n.8 (D. Md. 2008) (citing *Bowden v. Caldor, Inc.*, 710 A.2d 267, 276 (Md. 1998)).

---

[10] To the extent that Plaintiff seeks, in Count XI, to hold Defendant Ourisman liable for any of the statutory claims or torts alleged previously in her Complaint, I note that each of Plaintiff's claims is as to all Defendants, and therefore Ourisman could be liable under any of those claims if Plaintiff sufficiently shows its liability under the theory of *respondeat superior*. *See Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 727 n.5 (D. Md. 2008) (noting that the Court "directed Plaintiffs not to file a separate count for *respondeat superior*, as they had done in the Original Complaint, but explained that Plaintiffs may pursue the *theory* of vicarious liability as part of their other claims").

As noted, Plaintiff specifically demanded punitive damages. Compl. 25. Further, Plaintiff has pleaded sufficient facts to survive Defendants' Motion to Dismiss as to her fraud count. Therefore, she also has stated a claim for punitive damages on the fraud count. *See Ben-Joseph*, 529 F. Supp. 2d at 608 n.8; *Bowden*, 710 A.2d at 276.

### M. Individual Defendants

Defendants insist that Plaintiff's "claims against the individual Defendants must be dismissed" because each was acting within the scope of his employment for Defendant Ourisman "while committing the acts alleged and described by the Plaintiff in her Complaint." Defs.' Mem. 35. Defendants have not cited any authority for, or provided any argument in support of, this proposition, which appears to be a twist on the well-known rules of *respondeat superior*. *Cf. Wood v. Walton*, 855 F. Supp. 2d 494, 499 (D. Md. 2012) ("Under Maryland law, an employer may be liable for acts 'which his [employee] does with the actual or apparent authority of the [employer], ... the [employee] does within the scope of his employment, or ... the [employer] ratifies with the knowledge of all the material facts.'") (citation and footnote omitted). The Court will not develop Defendants' argument for them. Defendants' motion to dismiss the claim as to the individual defendants is DENIED, without prejudice to Defendants restating the same proposition, supported by authority, in a motion for summary judgment.

### IV.    CONCLUSION

In sum, for the reasons stated above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. As noted, Plaintiff has failed to state a claim for which relief can be granted under the FDCPA, RICO, TILA, ECOA, MCDCA, the Maryland Declaratory Judgment Act or the Federal Declaratory Judgment Act. Accordingly, Counts I, II, III, V, VII, and XI are DISMISSED. *See* Fed. R. Civ. P. 12(b)(6). Also, Plaintiff has failed to state a claim

for a violation of a Motor Vehicle Administration Dealer Bulletin, negligence based on fiduciary duty, or breach of contract based on a breach of the implied covenants of good faith and fair dealing. Therefore, Counts VIII and X are DISMISSED. *See id*. Plaintiff has stated claims as to all Defendants for fraud and violations of the FCRA, specifically 15 U.S.C. § 1681m, and the MCPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678-79 (2009). Accordingly, Counts IV, VI and IX remain. Additionally, Plaintiff's claim for punitive damages on the fraud count remains.

Defendants shall file an Answer no later than May 16, 2013, at which time the Court will enter a Scheduling Order and schedule a Fed. R. Civ. P. conference call with the parties to discuss further pretrial proceedings.

Dated: <u>May 2, 2013</u>

_____/S/_____
Paul W. Grimm
United States District Judge

lyb