## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MONICA STERLING,                           :

       Plaintiff                    :

v.                                 : **Civil Action No.**
                                         **AW 12-3193**

OURISMAN CHEVROLET OF BOWIE, INC., *et al.* :

       Defendants                 :

### DEFENDANTS' REPLY TO PLAINTIFF STERLING'S RESPONSE TO THEIR MOTION FOR SUMMARY JUDGMENT

Throughout her Opposition, the Plaintiff appears to misunderstand the nature of a summary judgment proceeding. The Defendants in this case are not obligated to offer evidence of anything. Summary judgment affords defendants in civil cases an opportunity to test the sufficiency of a *plaintiff's* evidence before going to trial. *See Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009) (defendants may "contest on a motion for summary judgment the adequacy of the plaintiff's evidence to support the allegations in his complaint."). A plaintiff may not successfully oppose a summary judgment motion by relying on *allegations in her Complaint.* She must point to *evidence* to support her allegations. "[A] complete failure of proof concerning an essential element … necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As this Court has explained, "[t]hus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

for summary judgment with an affidavit or other similar evidence." *Major v. CSX Transp., Inc.*, 170 F. Supp.2d 563, 566 (D. Md. 2001), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).  Where a nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may be made based on pleadings, depositions, answers to interrogatories, and admission.  *Celotex*, 477 U.S. at 324.  However, in order to counter that motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Major,* 170 F. Supp.2d at 566, *citing Celotex*, 477 U.S. at 324.  Of course, a mere scintilla of evidence is not enough to create a fact issue.  *Id.*

As shown herein, the Plaintiff's Opposition to Defendants' Motion for Summary Judgment fails to satisfy this burden.

## I.      No Material Facts In Dispute

In her Opposition, Plaintiff first points to five (5) "facts" that she asserts are material and are in dispute.  Each of these asserted "facts" are easily dismissed.

### 1.      Plaintiff understood that Ourisman would submit her financing application to lenders.

This is a fact asserted in Defendants' Motion for Summary Judgment. (Memorandum, p. 2)  It is supported by her deposition testimony:

> Q.      And in this case you knew that Ourisman was going to submit your application on your behalf to lenders who might be able to provide financing, correct?
> A.      Correct.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

(Exhibit A, Plaintiff Deposition, p. 81, l. 8-11)  In her Opposition, the Plaintiff "objects" to the statement and the Opposition asserts: "Plaintiff believed at the time that this would be the case, **but disputed statements and actions made by Defendants later on shifted how she perceived the process**."  (Opposition Page 4 of 34)  In support thereof, the Plaintiff does not point to any deposition testimony, discovery response, or affidavit that supports her "objection."

It is undisputed that the Plaintiff understood that Ourisman was not going to finance her loan, but was going to submit her credit application to a third-party lender in order to provide financing.  Moreover, as the Plaintiff further explained in her deposition, when she went to the dealer she knew she was going to have to pay for a vehicle and she intended to pay for it by "finance" as she did not have sufficient funds in her bank account to pay in cash.  (Exhibit A, p. 79, l. 15-21; p. 82, l. 1-5)

2. **Plaintiff has alleged that a "Mr. Lewinsky" told her that he pulled her credit report after she decided to purchase the Equinox on September 11, 2012.**

The Defendants do not dispute that an Ourisman employee pulled her credit report.  In fact, the Plaintiff specifically gave Ourisman her permission to pull her credit report.  (Exhibit A, p. 82, l. 22 – p. 83, l. 3)  This is not in dispute.  Although, there is no "Mr. Lewinsky" involved in this matter and it appears that the Plaintiff was referring to Defendant "Lewis Gilinsky."  As she testified at her deposition: "Mr. Lewinsky came over from Cierra calling him over and he had said he pulled my credit report and he showed it to me.  He said you know, I see that you're paying MBAC very well so there

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

should be no problem getting the vehicle if you agree to get it today.  I said yes and I finished the paperwork." (Exhibit A, p. 89, l. 1-6)  This is not a material fact in dispute.

### 3. GMAC called the Plaintiff and congratulated her on her new purchase.

The Defendants do not dispute this.  It is not material to the Plaintiff's claims against these Defendants.  GMAC is not a Defendant in this case, as the Plaintiff has already settled her claims against the lender.   Although the Plaintiff accuses the Defendants of "failing to mention this," it was specifically explained in Defendants' Motion for Summary Judgment: "Throughout her deposition, the Plaintiff repeatedly acknowledged that she understood she had not been approved for financing.  **She did, however, testify that GMAC called to congratulate her on her purchase**:

> Q.     And what, if anything, happened after that relative to Ourisman or the subject vehicle?
> A.     After that I got a call from GM AmeriCredit and they had specified – to congratulate me on the purchase of the vehicle and they wanted to go over some additional documentation.
> (Exhibit A, p. 145, l. 5 – l. 10)

(See Memorandum in Support of Motion for Summary Judgment, p. 15-16)

### 4. Plaintiff was told that she had to return the car because she did not provide the proper tax returns to prove her income or agree to have a co-signor.

The Plaintiff "objects" to Defendants' characterization that she "knew" why she had to return the car as opposed to acknowledging that this is why she was "told" that she had to return the car.  The distinction is irrelevant for the purposes of the Summary Judgment Motion.  In support of her MCPA claim the Plaintiff's Complaint asserted that the Defendants mislead her by making statements to her "that she was responsible for the

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

financing not being approved." (Complaint § 148) The Plaintiff has not introduced any evidence, any testimony, any discovery, or any affidavit to show that she was <u>not</u> responsible for the financing not being approved.  She certainly did not introduce any evidence to show that the Defendants did not believe this to be true.  To be sure, the following "disputed fact" makes it **clear beyond doubt** that the Plaintiff <u>was</u> responsible for the financing not being approved.

**5.** **Plaintiff received notice from Ally Bank (formerly GMAC) of an "adverse action" based on her credit score.**

In her Opposition, the Plaintiff references and attaches a letter dated 10/2/12 that she claims she received from Ally Bank on 10/12/12 (Exhibit H).  In order to show a dispute of fact, the Plaintiff references this document and notes that "Defendant fails to mention that Plaintiff received a letter on October 12, 2012, from Ally Bank (dated October 2, 2012), notifying her of their denial of her financing application, and stating that their "decision was based in whole or in part on information in a report from the credit reporting agency."  This document was not mentioned in Defendants' Motion for Summary Judgment **because the Plaintiff has never provided it to the Defendants.** The Defendants were not copied on the October 2, 2012 letter to Plaintiff Sterling from Ally Financial.  It was **<u>never</u>** produced by the Plaintiff in discovery.  The Defendants had never seen this letter before Plaintiff's Opposition was filed.

To be sure, in discovery, the Defendants specifically requested that the Plaintiff respond to the following interrogatories:

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

INTERROGATORY 10: If you claim that you were denied financing for the Equinox based on your credit report, please set forth the factual basis for such allegation, identifying all person(s) with personal knowledge of such facts and all documents relating to such facts.

**RESPONSE 10.     None.**

INTERROGATORY 11.   Did you receive, from any source, either written or electronically, a copy of your credit score as reflected at the time of the underlying transaction?  If so, from whom did you receive your credit score and in what form were you notified thereof?

**RESPONSE 11.**   I retrieved my credit scores through my personal account with Experian.com prior to going to the dealership.  Lew [G]ilinsky came to the sales rep desk to notify my of my score and told me Ourisman was able to work [with] me now that he saw the credit score and GMAC payment history was good and if I was willing to get the vehicle that day.

INTERROGATORY 12.   Did you receive, from any source, a notice of your right to personally obtain a copy of your credit report?  If so, from whom did you receive this notice and how was the notice communicated to you?

**RESPONSE 12.     No.**

(Exhibit B – Plaintiff's Answers to Ourisman's Interrogatories, Nos. 10, 11 and 12)

Defendant Ourisman also specifically requested that Plaintiff produce the following documents:

REQUEST 2.     Any and all documents which evidence, support, relate to or concern the facts and information set forth in your Answers to the Defendant's Interrogatories, and all documents you referred to or relied upon in answering said Interrogatories.

REQUEST 3.     Any and all documents you are requested to identify in response to the Defendant's Interrogatories.

*       *       *

LAW OFFICES
MᴄCᴀʀᴛʜʏ Wɪʟsᴏɴ
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

6

REQUEST 7.        Any and all documents that relate to, mention or refer to goods or services provided by the Defendant.

REQUEST 8.        Any and all documents that you have received in the last year pertaining to your credit score or credit report.

(Exhibit C – Plaintiff's Response to Ourisman's Requests for Production of Documents)

The Plaintiff did not produce this October 2, 2012 letter from Ally Bank in response to any of these specific document requests. In response to Request No. 8, in which Defendant specifically asked her to produce "any and all documents that you have received in the last year pertaining to your credit score or credit report[,]" the Plaintiff responded:

> "Plaintiff does not have any credit reports from the credit bureaus at the present time. Should the Plaintiff come into possession of any such document in the future it will supplement its response to this request at that time."

(Exhibit C)

Despite these specific discovery requests, the Plaintiff **never** provided this document. If she had, this case may have been closed months ago. Nonetheless, now that it has been produced, the fact that it "exists" is not a material fact in dispute.

### 6.        No Dispute Created by "WHAT WE OWE" Document

As a preliminary matter, Defendants object to Plaintiff's "Supplement to her Opposition," which was filed <u>four days after</u> the deadline for filing her Opposition and as a result, should not be accepted by this Court. It includes an exhibit (Exhibit D hereto), which Plaintiff claims creates a question of fact as to two issues. First, whether "Defendants" made an effort to obtain Plaintiff's tax returns on the day of sale, "and in

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

fact affirmatively told her she did not need to provide them[.]"   (Supplement to Opposition)   Second, whether, based on the attached exhibit, an "unsophisticated consumer" could reasonably believe that "the sale was final, and that financing had been approved[.]"   (Supplement to Opposition)   Even if this Court considers this "Supplement," the document does not create a question of fact.

Plaintiff's counsel questioned Defendant Henry Hylton, an Ourisman Finance Manager, about this document at his deposition. (Exhibit E, Hylton Depo. p. 63, l. 7 – p. 66. l. 4)  As set forth in the underlying Motion, Defendant Hylton explained the process through which customers in general, and Plaintiff Sterling specifically, are requested to provide documentation to support their loan applications.  See Memorandum in Support of Motion for Summary Judgment.  Defendant Ourisman does not directly request such information, but it relays to the customers the documentation that is requested by the *potential lenders.*  See id.  Defendant Hylton subsequently re-iterated that process when he was questioned about this document:

> Q.    Okay.  So do you see the fact that this particular We Owe You document does not say that Ms. Sterling owes them any documents?
> MR. EVANS: Objection.  Go ahead.
> THE WITNESS:  Yes.
> BY MR. KING:
> Q.    How do you explain the fact that she was not required to provide any of these documents, when your testimony indicates that she was required to supply some documents?
>
> *        *        *
>
> THE WITNESS:  As I mentioned earl[ier], when we get the callback from the lender, then we'll go back to the customer.  Go over the documents with the customer.  And the customer they're looking at the

LAW OFFICES
MᴄCᴀʀᴛʜʏ Wɪʟsᴏɴ
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

8

callback to see what they're requiring before they proceed.   And Ms. Sterling take note of the information that I required – that we requested.

(Exhibit E, p. 65, l. 1 – p. 66, l. 4)

There is no evidence regarding what point in the transaction this document was completed or provided to Plaintiff Sterling.   When she left the dealership with the vehicle, she had provided Ourisman with a Schedule C.   Even if it was Ourisman and not the potential lender who subsequently requested a signed form 4506-T, there is no place on this piece of paper where one could note such information.   There is no claim being made that the deal did not go through as a result of the Plaintiff's failure to provide a document that is listed on this document.

Plaintiff further argues that, based on this document a reasonable juror could find that an unsophisticated consumer may believe that the sale was final and financing had been approved.   To the contrary, this document does not mention anything about financing approval.   It is a pre-printed list of documents that a customer may still be required to provide to Ourisman, although none are checked on this form.   Indeed, there is no evidence that, to the contrary, the Plaintiff was requested to provide any of the materials listed on this form.

Moreover, the document does not exist in a vacuum, but is one additional piece of information provided to the consumer, along with the myriad of sales documents signed by and provided to the Plaintiff upon her attempted purchase of the vehicle. (Exhibit A, Plaintiff's Deposition, p. 118, l. 19 – p. 119, l. 9)  At her deposition, the Plaintiff testified to receiving, understanding, and signing each of these documents: the State of Maryland

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Vehicle Sales Contract (Exhibit A, p. 119, l. 16 – p. 120, l. 19); Retail Installment Sale Contract Simple Finance Charge (Exhibit A, p. 123, l. 16 – p. 126, l. 4); Supplement to Installment Sale Contract (Exhibit A, p. 126, l. 7 – p. 129, l. 19); and Agreement to Furnish Insurance Policy (Exhibit A, p. 129, l. 20 – p. 130, l. 9). See Memorandum in Support of Motion for Summary Judgment at p. 13 – 15. Additionally, during Robert Ourisman's deposition, Plaintiff's counsel asked him about this "we owe you" document and he explained:

> Q.     Is this document part of – does this document become part of the deal?
> A.     The final package, yes.
> Q.     How does the deal differ from the final package?
> A.     There's a – there's a lot of paperwork that's not necessarily what I do. There's other parts of the paperwork that need to be in the actual deal jacket to go to accounting. This would be one of them.
> Q.     So this document is not given to you as part of the deal, but ends up in the final – what do you call it again, final –
> A.     Package, deal jacket.
> Q.     Final deal jacket after the customer sits down and signs all these papers that you've printed out; is that correct?
> A.     Yes. This goes in the deal jacket.

(Exhibit F, R. Ourisman Depo., p. 62, l. 11 – p. 63, l. 7)

Similarly, at Lewis Gilinsky's deposition, he was asked why nothing was checked on this document and he explained:

> A.     This document would be if the customer was to be providing us something that we did not already have; she provided us with two years' tax returns.
> Q.     Okay.
> A.     So it wasn't something that she owed us, at that point, she had already given it to us. She won't owe it to us twice.

(Exhibit G, L. Gilinsky Depo., p. 95, l. 19 – p. 96, l.5)

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

10

There is simply no truth to Plaintiff's argument that an "unsophisticated consumer" would read the checklist document and reasonably understand that his sale was final and his financing approved by a third-party lender.  The standard is whether a reasonable "unsophisticated consumer" would be misled by an action, not an ostrich.  A reasonable "unsophisticated consumer" is not sent home with a new vehicle and this "WHAT WE OWE" checklist document by itself.  The consumer is, in fact, provided with all of the documentation identified which, the Plaintiff has acknowledged, clearly states that financing is not provided by Ourisman and that if financing is not approved, the consumer will not be able to keep the vehicle.  Id.

Even if this Court considers this late-filed Supplement, the document provided does not create a dispute of material fact.

II.   **Defendants Are Entitled to Summary Judgment On Plaintiff's Claim for Violation of the Fair Credit Reporting Act.  There is No Private Cause of Action for an Alleged Violation of this Act and Even If There Was the Defendants Have Not Violated the Requirements of the Act.**

As previously set forth in these proceedings, Ourisman had argued in its Motion to Dismiss that no "adverse action" letter was required to be given to Plaintiff Sterling since "her financing was denied because of the status of her 2011 tax return (which was not filed)" and not because of her credit report.  This Court denied the Motion to Dismiss Plaintiff's claim for Violation of the Federal Fair Credit Reporting Act (Count IV) because, based on the Complaint:

> "the Court may infer reasonably that Defendants took the 'adverse action' of denying credit to the Plaintiff ... based on either her credit report or her failure to file her tax return. ... **Additionally, Plaintiff sufficiently alleges**

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

**that Defendants violated § 1681m by failing to provide the required disclosures**."

(Memorandum Order and Opinion, p. 17)   The Plaintiff's Complaint was not only brought against Defendant Ourisman and its employees, it was also brought against "Ally Financial Inc. F/K/A GMAC, Inc." (Complaint)   The Plaintiff settled her claims with Ally shortly after filing the Complaint.

Ourisman has never been provided with a copy of this letter from Ally explaining to the Plaintiff that it was denying her request that it finance her loan "based in whole or in part on information in a report from [a] credit reporting agency." (Exhibit H)   This October 2, 2012 letter to Plaintiff Sterling fully complies with the § 1681m notice that is required in response to an "adverse action" that is taken based on one's credit report.

Throughout this litigation and as remains evident in the Plaintiff's Opposition to Defendants' Motion for Summary Judgment, either Mrs. Sterling or her attorney misunderstands Ourisman's role in the underlying transaction.   Ourisman does not decide whether to approve a loan.   Ourisman does not extend credit.   Ourisman does not offer financing.   Ourisman does not determine what documents are required to obtain financing.   (Exhibit G, L. Gilinsky Deposition, p. 34, l. 7-9)   Nor did Ourisman decide "the ultimate adverse action of denying [the Plaintiff] credit." (Opposition, p. 23) However the Plaintiff wishes to articulate Ourisman's role in the transaction, it does not offer financing and it does not make financing decisions.

The undisputed testimony in this case is that the lender informed Ourisman that it would approve the financing if Mrs. Sterling could provide tax returns as documentation

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

of income.  See Memorandum in Support of Motion for Summary Judgment, quoting H.

Hylton Deposition.  Moreover, as Defendant Gilinsky explained at his deposition:

> Q.     Do you recall with respect to this transaction what happened once the lender came back with its response?
> A.     The lender, to the best of my recollection, said that they would approve the deal with two years' tax returns as documentation of income and on a Chevrolet Equinox.

(Exhibit G, p. 37, l. 6 – l. 12)

Prior to the Plaintiff's Opposition, in which Ourisman became aware, for the first

time, that Plaintiff Sterling's credit score was part of the reason why Ally Bank refused to

finance the deal, it understood that the lender refused to finance the deal because the

Plaintiff did not file the requested tax returns.  After being questioned about when

Ourisman received payment from the lender for Mrs. Sterling's deal, Mr. Gilinsky

replied:

> A.     Did not occur.
> Q.     It did not occur?  Is that what you are saying, that it did not occur?
> A.     I said it did not occur.
> Q.     And how do you know that?
> A.     **There was a requirement that the lender had that was not met, so they refused to fund the contract, the lender's requirement.**
> Q.     How do you recall or what do you recall about that?
> A.     **The lender required two years' tax returns and a form that the customer signs so that the lender can verify with the IRS that the documentation is accurate.**
> Q.     Then what happened with that?
> A.     The customer provided the tax returns.  However, the lender requires that those tax returns get filed with the IRS.  And they determined that it was not filed.
> Q.     And do you recall how you became aware of this?
> A.     The lender alerted us.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

(Exhibit G, p. 68, l. 17 – p. 69, l. 17)  Thus, as Oursiman was not provided with this document informing Plaintiff Sterling that Ally was denying her application for a loan based on her credit score, it had no idea that that was one of the reasons for Ally's refusal to approve the loan.  Ourisman understood that it was because of the issue with the tax returns and the Plaintiff's corresponding inability to prove her income.

### A.    <u>No Private Cause of Action Exists</u>

In 2003, Congress passed the Fair and Accurate Credit Transaction Act ("FACTA"), which amended the FCRA.  *See* "A Dearth of Remedies," 113 Penn. State L. Rev. 1, 11-12 (Summer 2008).  One of these amendments was to take away consumers' right to bring a private cause of action under the Act for a creditor's alleged failure to notify their customer if they deny him credit based on his credit report.  *Id.*; *see* Section 311(a) of FACTA added subsection (h) to section 1681m.  *See* FACTA, Pub. L. No. 108-159, 311(a), 117 Stat. 1952, 1988-89 (2003).  Paragraph (8) of the new section 1681m(h) provides:

> (8)  Enforcement.
>> (A)  No civil actions.  Sections 616 and 617 [15 USCS § 1681n and § 1681o] shall not apply to any failure by any person to comply with this section.
>> (B)  Administrative enforcement.  This section shall be enforced exclusively under section 621 [USCS § 1681s] by the Federal agencies and officials identified in that section.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

15 U.S.C. § 1681m(h)(8) (2014).

The Federal District Courts in numerous jurisdictions have repeatedly applied this prohibition against private claims for violations of section 1681m.  These courts have consistently rejected arguments that the prohibition against private causes of action only

applies to *sub*section (h) of section 1681m.  *See Bruce v. Grieger's Motor Sales*, 422 F.

Supp.2d 988 (N.D. Ind. 2006) (no private right of action exists to enforce section

1681(m)(h)(8)); *Stavroff v. Gurley Leep Dodge, Inc.*, 413 F. Supp.2d 962 (N.D. Ind.

2006) (term "section" in section 1681m(h)(8) "unambiguously refers to the entire §

1681m."); *Murray v. Household Bank*, 386 F. Supp.2d 993, 997-99 (N.D. Ill. 2005)

(granting defendant's motion for judgment on pleadings after finding that "§ 1681m(h)(8)

precludes all private rights of action under § 1681m."); *Murray v. Cross Country Bank*,

399 F. Supp.2d 843, 844-45 (N.D. Ill. 2005) (granting motion to dismiss plaintiff's

section 1681m(d) claim after finding that "this section" in section 1681m(h)(8) is a clear

reference to section 1681m and not to a *sub*section, section 1681m(h); *see also Putkowski*

*v. Irwin Home Equity Corp.*, 423 F. Supp.2d 1053 (N.D. Cal. 2006); *Soroka v. J.P.*

*Morgan Chase & Co.,* 500 F. Supp.2d 217 (S.D.N.Y. 2007); *and Calloway v. Green Tree*

*Servicing, LLC,* 607 F. Supp.2d 669 (D. Del. 2009)..

The United States Court of Appeals for the Seventh Circuit has also explained that

there is no longer a private cause of action for an alleged failure to comply with section

1681m.  In *Perry v. First National Bank,* 459 F.3d 816 (7th Cir. 2006), the plaintiff

claimed that the FACTA amendment only eliminated private rights of action to enforce

§1681m(h), not § 1681m in its entirety.   Specifically, plaintiff argued that the term

"section" as used in § 1681m(h)(8) is ambiguous and it should be interpreted as if it reads

"subsection."  *Id.*  In rejecting plaintiff's argument he Seventh Circuit explained:

> We cannot accept Perry's interpretation.  Instead, we find that the phrase
> "this section" unambiguously refers to section 1681m as a whole.
> "Congress ordinarily adheres to a hierarchical scheme in subdividing

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

statutory sections." <u>Koons Buick Pontiac GMC, Inc. v. Nigh</u>, 543 U.S. 50, 60, 125 S. Ct. 460, 160 L. Ed. 2d 389 (2004). As the Supreme Court explained in Koons: This hierarchy is set forth in drafting manuals prepared by the legislative counsel's offices in the House and the Senate. The House manual provides:

"To the maximum extent practicable, a section should be broken into—

"(A) subsections (starting with (a));
"(B) paragraphs (starting with (1));
"(C) subparagraphs (starting with (A));
"(D) clauses (starting with (i)) . . . . " House Legislative Counsel's Manual on Drafting Style, HLC No. 104-1, p. 24 (1995).

The Senate manual similarly provides:  "A section is subdivided and indented as follows:
"(a) Subsection.--
"(1) Paragraph.--
"(A) Subparagraph.--
"(i) Clause. -- "Senate Office of the Legislative Counsel, Legislative Drafting Manual 10 (1997). <u>Koons</u>, 543 U.S. at 60-61 (citation omitted). <i>Cf.</i> <u>In re Farley Inc.</u>, 236 F.3d 359, 361-62 (7th Cir. 2000) [**9]  ("A legislature that chooses language with time-tested effects does not have to narrate those effects in order to achieve them; a statute is not a legal encyclopedia and need not ape one in order to specify the normal consequences of ordinary legal words and phrases.").

Congress used these standard designations in § 1681m. "Section" clearly is used to refer to § 1681m as a whole. For example, in § 1681m(h)(8)(A) -- which provides that the private right of action provisions of the FCRA do not apply to violations of "this section" -- sections "1681n" and "1681o" are referred to as "Sections." In § 1681m(h)(8)(B) -- which provides that enforcement of "this section" shall be exclusive to certain federal agencies and officials -- "1681s" is designated a section. It is only logical to assume, then, that Congress was referring to section 1681m when it used "this section" in § 1681m(h)(8). Subsection 1681m(h) also uses the phrase "this subsection" consistently when referring just to § 1681m(h) and its notice requirements, rather than § 1681m. See 15 U.S.C. § 1681m(h)(1), (3), (4), (5), and (6). In this case, the assumption "that Congress intended the same terms used in different parts of the same statute to have the same meaning" weighs heavily in favor of our interpretation of "this section" in § 1681m(h)(8). <u>Belom v. Nat'l Futures Ass'n</u>, 284 F.3d 795, 798 (7th Cir. 2002); <i>see also</i> <u>Firstar Bank, N.A. v. Faul</u>, 253 F.3d 982, 990 (7th Cir.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

2001); Taracorp, Inc. v. NL Indus., Inc., 73 F.3d 738, 744(7th Cir. 1996).

*Perry v. First Nat'l Bank*, 459 F.3d 816, 820-21 (7th Cir. 2006).  The *Perry* Court also explained that its decision was consistent with every federal court to address this argument, save one.  *Id.* at 822.

In contrast to this well-established body of law, there exists a singular case in which a Federal Court has found that a private cause of action survives the FACTA amendments.  In *Barnette v. Brook Road, Inc.,* 429 F. Supp.2d 741 (E.D. Va. 2006), the Court found that the statutory reference to "this section" in § 1681m(h)(8) only bars private rights to enforce § 1681m(h).  That Court found it significant that section 312(f) of the FACTA amendments provides that "[n]othing in this section, the amendments made by this section, or any other provision of this Act shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. §§ 1681n, 1681o) that existed on the day before the date of enactment of this Act."  *Id.*  These sections, 15 U.S.C. §§ 1681n and 1681o contain the provisions establishing a private right of action to enforce the FCRA.  *Barnette* explained that "312(f) dictates that private individuals may still enforce the requirements of § 1681m that ante-dated FACTA."  *Barnette,* 429 F. Supp.2d 741.  This analysis has been repeatedly criticized, as section 312(f) of FACTA is silent about *who has the right to bring suit* to hold responsible parties liable under sections 1681n and 1681o.  *See Perry,* 459 F.3d at 823.

More recently, the *Barnette* analysis has also been rejected by another Court in the Eastern District of Virginia in *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 35507 (E.D. Va. April 1, 2011).  In that case, plaintiff argued that the

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

defendant failed to provide her with an "adverse action notice" after determining that she failed to qualify for a federal home loan modification program. Defendants moved to dismiss, arguing that there was no private right of action under section 1681m of the FCRA. That Court reviewed this same issue, whether 1681m(h)(8) precludes private enforcement of section 1681m in its entirety or only subsection 1681m(h). That Court rejected the *Barnette* analysis and, instead, followed "[v]irtually every federal district court and the only federal court of appeals to interpret § 1681m(h)(8)" and found that it was "clear and unambiguous" that the word "section" means "section" and thus no private right of action exists for violations of section 1681m in its entirety. *Id.* at *21 (string citations omitted). The *Bourdelais* court rejected the *Barnette* court's conclusion that the use of the word "section" in 1681m(h)(8) was a "drafting error" that should be corrected by the courts. Agreeing with the "overwhelming weight of authority holding that the phrase 'this section' in § 1681m(h)(8) refers to section 1681m in its entirety, and thus no private right of action to enforce section 1681m exists[,]" the *Bourdelais* Court dismissed plaintiff's claim. *Id.* at *26.

In bringing this claim for violation of the FCRA, the Plaintiff implicitly ignores the well established line of cases and, instead, relies on the singular authority of *Barnette, supra.* That consistently-criticized decision was made in the same litigation as the subsequent opinion, *Barnette v. Brook Road, Inc.*, 457 F. Supp.2d 647 (E.D. Va. 2006), upon which Plaintiff Sterling relies to support her argument that, even though Ourisman understood that Ally denied her financing application because she had failed to file her tax returns, it was required to send her written notification of an "adverse action" under

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

the Fair Credit Reporting Act.  Even if this Court were to reject the analysis employed by the overwhelming majority of jurisdictions and, instead, follow *Barnette* in finding that Plaintiff Sterling has a right to bring a private cause of action under section 1681m of FCRA, which is hereby opposed, Defendants are entitled to summary judgment based on the undisputed facts of the case.

**B.   Ourisman Not Require to Send "Adverse Action" Letter to Plaintiff**

Despite the Plaintiff's description of the *Barnette* case a being "almost identical" to the present one, there are many important differences.  In that case, the plaintiff received a flyer in the mail informing her:  "You are Pre-Qualified by CPS, a national auto finance company" for a car loan.  *Id.* at 651.  The flyer also directed the recipients "to take the offer to Car America."  *Id.*  Although Car America had financed its own auto loans, it stopped that practice a little more than one month before the plaintiff sought to buy a car.  *Id.*  When the plaintiff went to Car America, it would not offer a car for sale to the consumer unless she had been pre-approved by a lender.  *Id.*  After the pre-approval process, the customer would select a car and Car America would draft the contract for sale. *Id.*  At that point, even though a third-party lender was required to finance a deal, Car America reserved its right to cancel a deal if a lender required a rate that would cause Car America to "lose money on the deal[.]"  *Id.* at 652.  Plainly, Car America *was* a creditor under the FCRA.  The undisputed facts do not support the same finding with respect to Defendant Ourisman.

Moreover, the *Barnette* court's analysis as to why Car America was required to provide separate notice of an "adverse action," in addition to the two lenders who denied

LAW OFFICES
MᶜCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

credit to the plaintiff, is flawed.  That Court concluded that "Car America repossessed a car because the owner's application for credit was denied, not because the owner had defaulted, so the action clearly happened as a result of information contained in a credit application."  *Id.* at 657.  The Court has equated all denials of a "credit application" with FCRA's requirement that one who takes "adverse action" as a result of information contained in a "credit report" must provide written notice.  15 U.S.C. § 1681m(a).  In this case, Sterling returned the vehicle to Ourisman after the deal fell through because Plaintiff Sterling's "credit application" was not approved, i.e., she could not prove her income through filed tax returns; Ourisman did not take any adverse action because of information contained in a "credit report."   The fact that the *Barnette* court did not distinguish between actions taken based on a "credit application," i.e., failure to verify employment or income, and actions taken based on a "credit report," i.e., credit score, is not controlling on this Court.  Nor should the *Barnette* opinion be persuasive given the distinguishing factors of this case and the refusal to recognize such a cause of action in the overwhelming majority of Federal Courts that have addressed the issue.

**III.   Defendants Are Entitled to Summary Judgment On Plaintiff's Claim for Violation of the Maryland Consumer Protection Act.**

    **A.   Plaintiff Cannot Establish an *Actionable Claim* for Violation of the MCPA Unless she shows that *she was actually injured* as a result of the alleged violation.**

In Plaintiff's Opposition she appropriately notes that, under the MCPA, there may be a violation of the MCPA "whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice." Md. Code Ann., Comm. Law, §13-302.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Indeed, the public enforcement mechanisms of in the MCPA are set up to prevent potentially unfair or deceptive trade practices from occurred, even *before* a consumer is injured.   *See Citaramanis v. Hallowell*, 328 Md. 142, 153, 613 A.2d 964 (1992). However, the Plaintiff fails to acknowledge the difference between an enforcement action brought by the Division of Consumer Protection and an action brought by an individual consumer.   The standard is not the same for a private action for damages allowed by section 13-408:   "In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover **for injury or loss sustained by him as the result of a practice prohibited** by this title."   This restriction on bringing a private cause of action under the CPA is intended to "'prevent aggressive consumers who were not personally harmed by the prohibited conduct, or even involved in a transaction with the offending businessman, from instituting suit 'as self-constituted private attorneys general' over relatively minor statutory violations.'"   *Id.* at 152, *citing* 1 H. Alperin & R. Chase, Consumer Law:  Sales Practices and Credit Regulation §136 at 186 (1986).

Although the Plaintiff may have claimed that she suffered actual injury in the form of a lost warranty on tires and late fees for her trade-in vehicle[1], the undisputed evidence shows that these alleged injuries were not *caused by* the Defendants' alleged unfair or deceptive trade practices.  As shown in the underlying Motion for Summary Judgment, the Plaintiff has repeatedly acknowledged that she actually understood that her purchase

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

---

[1] See Memorandum Opinion, p. 22-23.

of the vehicle was contingent upon her being approved for financing.  <u>See</u> Memorandum in support of Motion for Summary Judgment, p. 12 – 15)

Thus, even if it could be shown that Ourisman engaged in an unfair trade practice through its alleged statements concerning when her purchase was "final," and even if the Plaintiff has alleged that she suffered injury because she proceeded with the transaction, assuming that the deal would become final, all of which is denied, **the undisputed evidence is that Plaintiff Sterling understood the deal was _not final_ unless or until the financing was approved by a lender.**  It is undisputed that the alleged statements by Robert Ourisman that the sale would be "final" once her deposit cleared, or even the blank "You Owe Us" document did not *cause* the Plaintiff to suffer injury.   It is undisputed that despite her subsequent attempts to show that she *could have been* misled into believing that the deal was "final," the evidence is that she was <u>not</u> misled.

Plaintiff cites to this Court's opinion in *Allen v. Bank of Am., N.A.,* 933 F. Supp.2d 716 (D. Md. 2013) to support her position that she may recover under the MCPA without showing that she was actually misled.  However, in that case this Court explicitly noted: "In order to recover damages for the injury or loss sustained, 'consumers must prove that they relied on the misrepresentation in question.'  *Bank of America, N.A. v. Jill P. Mitchell Living Trust,* 822 F. Supp.2d 505, 532 (D. Md. 2011) (*citing Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 A.2d 200, 235 (D. Md. 2000))." *Allen,* 933 F. Supp.2d at 730.

For this reason, the Defendants are entitled to judgment as a matter of law on Plaintiff's MCPA claim.  The expert testimony introduced by the Plaintiff as to certain

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

alleged misleading acts is entirely irrelevant to Plaintiff's MCPA claims if the undisputed evidence is that she was not misled by them.  It could be relevant in a hypothetical action brought by the Division of Consumer Protection, but not by a private citizen seeking personal relief.

### B.     Expert Opinions Do Not Create a Dispute of Fact

The Plaintiff counters Defendants' Motion for Summary Judgment by pointing to her expert's report.  (Opposition at p. 14)  Although she asserts that it includes "facts and opinions" that the Defendants have failed to address, a review of the "expert report" shows that it is entirely devoid of any *fact* that would prevent this Court from granting summary judgment on the claims remaining against these Defendants.  The report is full of "opinions" regarding the nature of underlying transaction.  The Plaintiff does not cite this Court to a single fact in the expert report.

To be sure, Mr. Stivers does not believe that the course of conduct that occurred in the underlying attempted transaction was appropriate.  However, that opinion does not prevent this Court from granting judgment in favor of the Defendants.  His opinions cannot create a dispute of material fact.  Nor do his opinions that certain acts or omissions constitute "unfair or deceptive trade practices" make it so.  The expert does not testify to any "facts" upon which the Plaintiff's claim is dependent.  For example, there is no testimony establishing that *as a result of the* Defendants' alleged acts and omissions the Plaintiff responded in a certain way.  Rather, the testimony concerns how consumers, generally, may be "misled."  Indeed, there is nothing in his report that changes the fact that Plaintiff Sterling was not misled by any act or omission by the Defendants and

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

therefore, even if their acts were "unfair or deceptive," she cannot succeed on her claim against them. *See supra.*

### C.   Individual Defendants Are Not Liable for Any MCPA Violation

As shown in Defendants' underlying Motion for Summary Judgment, even if this Court were to find that Defendant Ourisman was not entitled to summary judgment on the Plaintiff's MCPA claim, the individual Defendant employees are entitled to judgment.   Plaintiff argues that each individual Defendant may be individually liable because he "participated directly in … the deceptions or misrepresentations" and "had knowledge of the practices."   (Opposition at p. 19)   Yet, the Plaintiff does not point to a single "deception or misrepresentation" made by any of these individual Defendants or identify a deceptive "practice" which any of these Defendants were knowledgeable.

As to Defendant Hylton, she argues that he interacted with her by reviewing her credit application with her and explained to her what addition documentation was needed. (Opposition p. 20)   Yet, she does not identify a single "deception or misrepresentation" that she can attribute to him.   Similarly, as to Defendant Taliaferro, there is no "deception or misrepresentation" attributed to him.   The Plaintiff does state that he told her she needed to return the vehicle, but this was not a "false representation."   (Opposition p. 21) As to Defendant Gilinsky, the Plaintiff does not even attempt to identify any "deception or misrepresentation in which he participated.   (Opposition p. 21)

As explained in the underlying Motion, judgment must be entered in favor of these individual Defendants.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

**IV.**   *Defendants Are Entitled to Summary Judgment On Plaintiff's Claim for Fraud.*

With respect to her fraud count, Plaintiff Sterling argues that there is a dispute of fact as to whether an Ourisman employee told her that the sale of a new vehicle to her would be "final" once her second deposit cleared.   This was alleged in her Complaint. Defendant Ourisman showed that the employee who allegedly made this statement has no recollection of doing so.   In order to create a dispute of fact, the Plaintiff would have to point to some evidence that the statement was actually made.   She has not done so.   She has not attached or incorporated any affidavit, answer to interrogatory or deposition testimony to show that the employee made that statement.   Nonetheless, Plaintiff argues that there is a dispute of this fact because, during her deposition she did reply "yes" to her counsel's question:

> "Ms. Sterling, in the complaint that you filed in this case you stated various representations that were made to you during the course of this transaction and all of the representations – or your allegation of those representations that were made to you by Ourisman's agents and employees are true and accurate to the best of your knowledge and understanding?"

(Exhibit A, p. 195, l. 3-10)    Defendants submit that this is not evidence upon which a genuine dispute of fact may be based.

Even so, Plaintiff Sterling is relying on that statement to show that she was *misled* into believing that the "sale was final" even if her financing was not approved.   She would like this Court to believe that based upon this alleged comment by an Ourisman employee she believed that she would be able to keep this new vehicle for the cost of her down payment, $1,800.00, if her financing was not approved.   It is ludicrous, particularly

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

given her undisputed deposition testimony that she knew this was not the case. *See supra.*

Next, the Plaintiff argues that Ourisman should have anticipated that GMAC / Ally Bank would call the Plaintiff to congratulate her on her purchase even though it had not yet approved her financing, and that Oursiman's failure to inform the Plaintiff that she might receive such a call constitutes a fraudulent nondisclosure. (Opposition at Page 28-30) There is no sound basis for the argument. First, there is no evidence that Ourisman ever knew that GMAC / Ally Bank made such a call. There is no evidence that Ourisman ever knew that GMAC / Ally Bank had ever made such a call in the past. Even if it did, GMAC / Ally Bank is the *lender* in this situation and is the actual entity making the decision as to whether to finance her agreement. Ourisman would not know whether a purchase was "final," i.e., the lender accepted the financing, before the lender itself knew its own decision.

In denying Defendants' Motion to Dismiss the fraud claim, this Court noted that the Plaintiff had alleged in her Complaint: "48. Shortly after that, Ms. Sterling received a welcome letter and a welcome email thanking and congratulating her on the purchase of the Equinox." (Memorandum Opinion at p. 26) Plainly, it is inferred in the Complaint that this congratulatory letter and email came from Ourisman, and not a third-party lender. In contrast to the Complaint allegations, the evidence shows that the so-called "congratulations" came in the form of a telephone call from GMAC / Ally Bank. The evidence does not support the Plaintiff's claim of fraud.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Finally, the Plaintiff argues that a "jury could easily infer intent to defraud from the Defendants' actions." (Opposition at p. 30) Plaintiff correctly notes that she is not required to introduce a "smoking gun" describing one's intent to defraud another. However, there are no facts in this case from which such an intent could be inferred.

Defendant Ourisman is a car dealer – it is in the business of selling automobiles. The Defendants employed by Ourisman are also in the business of selling cars. What would be their motivation to defraud the Plaintiff into thinking that they had sold her a vehicle when, in fact, they had not made a final sale? Plaintiff argues this is an attempt to "squeeze extra money" out of her. (Opposition at p. 31) However, there is no evidence or indication that at any time after she allegedly believed that the deal was final that she was asked to make any additional payment or incur an additional fee. Rather, she was asked to return the vehicle because the loan could not be approved. The inference is that whatever profit the dealer would have made off the sale of that vehicle would then be lost. There is no evidence upon which it could reasonably be inferred that the Defendants were intended to defraud her about the sale of the vehicle.

## V.   *Conclusion*

As set forth in the underlying Motion for Summary Judgment and as further stated herein, the Defendants, Ourisman Chevrolet of Bowie, Inc., Henry Hylton, William Taliaferro, and Lew Gilinsky, are each entitled to judgment as a matter of law on the Plaintiff's remaining claims:   Violation of the Federal Fair Credit Reporting Act; Violation of the Maryland Consumer Protection Act; and Fraud.   These Defendants respectfully request that this Honorable Court enter judgment in their favor.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Respectfully submitted,

McCARTHY WILSON LLP

By:   //s// *Amy Leete Leone, Esquire*

Amy Leete Leone, Esquire  #25313

By:   //s// *Richard W. Evans, Esquire*

Richard W. Evans, Esquire  #12528
2200 Research Boulevard, Suite 500
Rockville, Maryland 20850
(301) 762-7770
evansr@mcwilson.com
*Attorneys for Defendants Ourisman, Hylton,
Taliaferro, and Gilinsky*

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Reply in Response to Defendants' Motion for Summary Judgment was e-filed and mailed, postage prepaid, this 6th day of October 2014, to:

Tyler Jay King, Esquire
1407 Nicholson Street, NW
Washington, DC  20011
*Counsel for Plaintiff Sterling*

By:     //s// *Richard W. Evans, Esquire*
   Richard W. Evans, Esquire  #12528

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770