**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| MONICA STERLING, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Case No.: PWG-12-3193 |
| | * | |
| OURISMAN CHEVROLET | | |
| OF BOWIE INC., *et al.*, | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Monica Sterling went to Defendant Ourisman Chevrolet of Bowie, Inc. ("Ourisman"), where Ourisman employees (and Defendants) Henry Hylton, William Taliaferro, and Lewis Gilinsky assisted her in the initial steps of trading in her vehicle and purchasing a new one. While Plaintiff's finance application was pending with the lender, Defendants accepted her trade-in vehicle, the parties completed all other paperwork, Plaintiff made her down payment, and she took possession of the new vehicle. Weeks later, Defendants demanded that Plaintiff return the new vehicle because her financing did not go through. Plaintiff filed suit against Defendants and Ally Financial, Inc. ("Ally Bank"),[1] alleging that Defendants misled her to believe that the sale was final when she left the lot with the new vehicle. After the Court's resolution of Defendants' Motion to Dismiss, ECF No. 5, three of Plaintiff's eleven claims remain, for violations of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Maryland Consumer Protection Act, ("MCPA"), Md. Code Ann., Com. Law § 13- 101 *et seq.*,

---

[1] Plaintiff later voluntarily dismissed Ally Financial, Inc. from the case. *See* ECF No. 13.

and common law fraud.  Mem. Op. & Order, ECF Nos. 16 & 17, Defendants now move for summary judgment as to these claims, ECF No. 56.[2]  Because no genuine dispute of material fact exists and Defendants are entitled to judgment as a matter of law, as discussed below, their Motion IS GRANTED.

## I.    BACKGROUND[3]

On September 11, 2012, Plaintiff went to Ourisman to purchase a vehicle.  Defendants informed her that she would have to apply for financing through an application that Defendants would submit to various lenders unrelated to Ourisman.  Defs.' Mem. 2; Pl.'s Opp'n 4.[4] Gilinsky "told the Plaintiff that he had pulled her credit report after she had decided that she wished to purchase the Equinox."  Pl.'s Opp'n 4; Defs.' Reply 3–4.  The potential lender required Plaintiff to submit a copy of Schedule C from her 2011 tax return as proof of income. Defs.' Mem. 2.  Plaintiff provided a copy of Schedule C from her 2010 tax return instead.  *Id*. at 2–3.  She traded in her old vehicle and paid a deposit, and Defendants allowed her to take the new vehicle, even though the finance application still was pending.  *Id.* at 3–6.  The lender, and

---

[2] The parties have briefed the motion fully.  ECF Nos. 56-1, 58, 61.  Plaintiff also has filed a Motion to File Surreply (and attached the Surreply to that motion), which Defendants oppose, and for which Plaintiff has filed a Reply.  ECF Nos. 64, 68, 69.  A hearing is not necessary.  *See* Loc. R. 105.6.  Plaintiff's Motion to File Surreply IS GRANTED, and I have considered the Surreply in deciding the pending motion.

[3] In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Ms. Sterling "does not object to the majority of Defendants' Statement of Material Facts Not in Dispute."  Pl.'s Opp'n 3–4.  Unless otherwise stated, this background is composed of undisputed facts, as presented by Defendants and accepted and augmented by Plaintiff.  *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

[4] Although Plaintiff concedes that she initially "understood that Ourisman would submit her financing application to lenders," she asserts that "disputed statements and actions made by Defendants later on shifted how she perceived the process."  Pl.'s Opp'n 4.

then Taliaferro, notified Plaintiff more than a week later that she also had to provide a form 4506-T so that the lender could pull copies of her tax returns.  *Id.* at 3.  The lender also congratulated her on her purchase.  Pl.'s Opp'n 4; Defs.' Reply 4.  She claims that she then learned that neither her 2010 nor her 2011 tax returns had been filed, but she submitted the form 4506-T anyhow.  Defs.' Mem. 3–4.

Taliaferro told Plaintiff on October 1, 2012 that, without her tax returns, the loan would only go through if her husband co-signed for it.  Defs.' Mem. 4; Pl.'s Opp'n 5.  Because she did not want her husband to co-sign, Plaintiff returned the vehicle on October 6, 2012. Defs.' Mem. 4–5.  She received a letter from Ally Bank on October 12, 2012, informing her that it denied her application, in whole or in part based on her credit report.  Pl.'s Opp'n 5; Defs.' Reply 7 & Ex. H.  Meanwhile, Defendants had replaced the tires on Plaintiff's old vehicle, and when she returned the new vehicle, they said that she would have to pay for the improvements made to her trade-in vehicle, and for her use of the new vehicle.  Defs.' Mem. 5.  In the end, however, Plaintiff was not charged for either the new tires or her use of the new vehicle, and Defendants refunded her deposit.  *Id*. at 5–6.

## II.    STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to

the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin, v. Baxter Healthcare Corp.*, 197 F. Supp. 2d 669, 671 (D. Md. 1999). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## III.   DISCUSSION

### A.   FCRA Violation (Count IV)

The FCRA provides for civil liability for "any person [that] takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report," if the person taking action fails to give the consumer, *inter alia*, "notice of the adverse action." 15 U.S.C. § 1681m(a); *see Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52–53 (2007). It is undisputed that Plaintiff was denied financing by Ally Bank (an entity unrelated to Ourisman), and Plaintiff claims that Defendants violated the FCRA by failing to provide notice to her of this adverse action. Compl. ¶¶ 133–34. Defendants argue that summary judgment in their favor is appropriate because the undisputed evidence establishes that it was not Ourisman that denied Plaintiff credit, and Ourisman's decision not to help Plaintiff secure financing and to make Plaintiff return the vehicle was based on her failure to file her tax return and not based on

her credit report.  Defs.' Mem. 8.  Alternatively, they contend that no private cause of action

exists for a violation of § 1681m.  Defs.' Reply 14–19.[5]

*1.  Basis of decision*

Plaintiff insists that Ourisman, as a car dealership, was required to provide notice of the

adverse action.  For purposes of Defendants' motion, I assume, *arguendo*, that Plaintiff is correct

in this regard.  Additionally, she contends that "the evidence in fact shows that the denial was at

least partially based on Ms. Sterling's credit report, as evidenced by a letter from Ally Bank

regarding the poor state of Ms. Sterling's credit at the time, and the attempt by Defendant

William Taliaferro to get a co-signer."  Pl's Opp'n 10; *see* Pl.'s Surreply 4 ("[T]he contents of

the Ally Letter and other evidence [i.e., Plaintiff's testimony that Ourisman's told her that she

needed someone to co-sign for the car if she wanted to keep it] suggest[] that the decision was

made based on Plaintiff's credit.").  Plaintiff attached the October 12, 2012 letter she received

from Ally Bank ("Ally Bank Letter") to her Opposition.  Pl.'s Opp'n Ex. A, ECF No. 58-1.

Indeed, the Ally Bank Letter states:

> We were recently informed by Ourisman . . . that it was considering the credit sale or lease of an automobile or other product to you and asked whether we would be prepared to accept your obligation if the transaction was completed.
>
> We must regretfully inform you that we were not agreeable to handling the proposed transaction as submitted.  We would, however, be agreeable to handling the transaction under the modified terms which have been relayed to the dealer.

---

[5] Defendants do not raise the argument regarding the existence of a private cause of action until their Reply, and generally an argument cannot be raised for the first time in a reply. *Clawson v. FedEx Ground Packaging Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).  "However, the power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such arguments in appropriate circumstances." *Id.*  The rationale for this rule, however, is that the opposing party should have the opportunity to respond, *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), and here, Plaintiff has filed a Surreply, ECF No. 68-1, albeit without choosing to address this new argument.  Therefore, I will consider this argument.

> *Our decision was based in whole or in part on information in a report*
> *from the credit reporting agency . . . .*

*Id.* (emphasis added).  As Plaintiff sees it, "if Ourisman claims that it did not go through with the sale because it was unable to assign financing, and it was unable to assign financing because the potential assignee based its denial in whole or in part on the credit report, then it was part of Ourisman's decision as well."  Pl.'s Opp'n 11.  Plaintiff does not provide either legal or factual support for this theory, and therefore it does not create a genuine dispute of material fact.  *See Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (noting that wholly speculative assertions do not create "fair doubt").

Noting that Plaintiff failed to reference or produce the Ally Bank Letter in discovery, despite interrogatories and document requests to which it would have been responsive, Defs.' Reply 5–6, Defendants maintain that they were unaware of it until Plaintiff filed her Opposition on September 19, 2014, such that it was not a basis for their decision not to secure financing for her,[6] *id.* at 13.  Plaintiff responds with evidence showing that Defendants knew of the Ally Bank Letter, if not its contents, as early as June 11, 2014.  *See* June 11, 2014 Email from Pl.'s Counsel to Def. Counsel, Pl.'s Surreply Ex. A, ECF No. 68-2 (referencing Supplemental Answer to document production request); June 27, 2014 Ltr. from Def. Counsel to Pl.'s Counsel, Pl.'s Surreply Ex. C, ECF No. 68-4 (referencing Ally Bank Letter).  Yet, this evidence does not demonstrate that Defendants knew of the Ally Bank Letter at the time of their 2012 decision not to secure financing for Plaintiff.  Additionally, although Plaintiff offers evidence in the form of her own deposition testimony that she was asked to have someone co-sign for the loan, and Plaintiff argues that the evidence demonstrates that her "credit was a barrier to her financing the

---

[6] Defendants do not challenge the Ally Bank Letter's authenticity or argue that it should not be considered on summary judgment.  Rather, Defendants attach it to their Reply.  Defs.' Reply Ex. H, ECF No. 61-8.

car," Pl.'s Opp'n 12, she has not shown how that testimony establishes that Defendants based their decision on Plaintiff's credit report.

Rather, the evidence on the record before me includes Plaintiff's Answers to Interrogatories, in which she stated that Ourisman told her that they *could* provide financing based on her credit report and that she had no factual basis for her contention that she was denied financing based on her credit report. *See* Pl.'s Answers to Interrogs. 5–6, Defs.' Mem. Ex. E, ECF No. 56-6; *see also* Fed. R. Civ. P. 26(e)(1) (duty to supplement discovery responses). It also includes Plaintiff's deposition testimony that Taliaferro told her that "if [she] didn't *file the taxes* he wasn't sure how the financing was going to go through," and later "said on the phone that if [she] couldn't provide any other person to sign the loan … and [she] didn't *have the tax returns* then [she] needed to bring the car back in." Sterling Dep. 156:22 – 157:17, 162:4–9, Defs.' Mem. Ex. A, ECF No. 56-2 (emphasis added); *see also id.* at 160:21 – 161:7 (testifying that Taliaferro told her that "[i]f the financing didn't go through and [she] didn't put [her] husband on the car," she "would have to bring the vehicle back"). Although Plaintiff also testified that Taliaferro did not "give [her] the reason that the financing wouldn't go through," *id.* at 159:12–16, that statement does not directly support the proposition that the denial was based on her credit report, and moreover, it is only a scintilla of evidence that is insufficient to defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Further, Defendants provide evidence in support of their assertion that "Ourisman understood that the lender refused to finance the deal because the Plaintiff did not file the requested tax returns," Defs.' Reply 13. *See* Gilinsky Dep., Defs.' Reply Ex. G, ECF No. 61-7. Specifically, Gilinsky testified that, when a customer seeks to finance a vehicle, "the application has to be submitted to a lender," which "reviews it and tells [the dealership] that yes, they are

going to give [the customer] a loan, no, they are not going to give . . . the customer a loan or, yes, if these conditions are met," and that, in the case of Sterling's application, it was "a conditional approval," in that "[t]he lender . . . said that they would approve the deal *with two years' tax returns as documentation* of income and on a Chevrolet Equinox." Gilinsky Dep. 33:10–17, 37:6–12 (emphasis added). Gilinsky also testified that the lender "refused to fund the contract" because "[t]here was a requirement that the lender had that was not met," namely, "[t]he lender *required two years' tax returns* and a form that the customer signs so that the lender can verify with the IRS that the documentation is accurate," and in this case, although Plaintiff "provided the tax returns . . . , the lender requires that those tax returns get filed with the IRS. And they determined that it was not filed." *Id.* at 69:1–14 (emphasis added). Thus, there is no genuine dispute that, insofar as Defendants, as opposed to Ally Bank, took an adverse action, they did so based on Plaintiff's failure to file her tax returns and not based on her credit report. *See id.* at 33:10–17, 37:6–12, 69:1–14; Sterling Dep. 156:22 – 162:9; Pl.'s Answers to Interrogs. 5–6. And, although Plaintiff argues that "common sense dictates that Ms. Sterling's credit score must have been part of Ourisman's decision, because it was far below average. Ms. Sterling's credit score was 559, well below the 620 cutoff commonly used to determine creditworthiness," Pl.'s Opp'n 11, Plaintiff does not offer any evidence in support of her position. Therefore, it cannot create a genuine dispute of material fact. *See Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (noting that wholly speculative assertions do not create "fair doubt").

   2.  *Private action for violation of § 1681m*

   Defendants argue that "no cause of action exists . . . under the Act for a creditor's alleged failure to notify their customer if they deny him credit based on his credit report." Defs.' Reply 14. Indeed, in 2003, Congress passed the Fair and Accurate Credit Transactions Act

("FACTA"), Pub. L. No. 108-159 (Dec. 4, 2003), which, *inter alia*, "expanded the list of provisions for which no private claims may be brought."  Elizabeth D. De Armond, *A Dearth of Remedies*, 113 Penn. St. L. Rev. 1, 11–12 (2008).  Previously, "consumers could enforce [15 U.S.C. § 1681m(a)] through a private action under the Act."  *Id.* at 12 (citing 15 U.S.C. §§ 1681n, 1681o).  But, through the FACTA, in what has been called "a stunning strike against individual privacy," Congress added § 1681m(h)(8) and "eliminated the decades-old enforcement right by prohibiting nearly all causes of action by consumers against users of consumer reports who violate the Act's requirements." *Id.*  Section 1681m(h)(8) now provides:

> Enforcement
> (A)  No civil actions
>      Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.
> (B)  Administrative enforcement
>      This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

Professor De Armond cites twenty cases holding that "FACTA eliminated any private right of action for a violation of § 1681m."  *See id.* (citing, *e.g.*, *Bonner v. CorTrust Bank, N.A.*, No. 05-137 PS, 2006 WL 1980183, at *3 (N.D. Ind. July 12, 2006) (collecting cases)).  She also cites one case to the contrary, the case on which Plaintiff relies in support of her contention that Defendants violated § 1681m (though not to refute this argument which, as previously noted, Plaintiff does not address):  *Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741, 749 (E.D. Va. 2006).  There, a judge in the Eastern District of Virginia observed:

> [S]ection 312(f) of FACTA provides that, "[n]othing in this section, the amendments made by this section, or any other provision of this Act shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. 1681n, 1681o) that existed on the day before the date of enactment of this Act." Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108–159, § 312(f), 117 Stat. 1952, 1993 (codified as amended at 15 U.S.C. § 1681n, Historical and Statutory Notes (2003)).

*Id.* at 747.  On that basis, the court rejected a plain language analysis and concluded that "the use of 'section' instead of 'subsection' in § 1681m(h)(8) was a drafting error," reasoning that "[a]n examination of the legislative history reveals no mention of a wholesale withdrawal of a preexisting private right of action," and that, in § 312(f), "Congress expressly preserved the private right of action in all by the newly enacted subsections."  *Id.*

Another judge in the Eastern District of Virginia revisited the issue in 2011.  *See Bourdelais v. J.P. Morgan Chase*, No. 10CV670-HEH, 2011 WL 1306311, at *7–8 (E.D. Va. Apr. 1, 2011).  The court noted that "[v]ery few courts have adopted *Barnette*," and "only one court outside this division has endorsed *Barnette*'s analysis over the plain-meaning reading of § 1681m(h)(8)."  *Id.* at *7.  It further observed that "[c]ourts have instead continued to give the word 'section' its plain meaning, finding that there is no actual conflict between this plain-meaning reading of § 1681m(h)(8) and § 312(f) of FACTA."  *Id.*  The court adopted the Seventh Circuit's analysis in *Perry v. First Nat'l Bank*, 459 F.3d 816, 822–23 (7th Cir. 2006), to conclude that "§ 312(f) of FACTA does not actually conflict with the plain-meaning reading of § 1681m(h)(8)."  *Id.* at *7–8.  It reasoned:

> As the Seventh Circuit explained in *Perry*:
>
>> While section 312(f) of FACTA provides that the amendments shall not "affect any liability" under 15 U.S.C. §§ 1681n and 1681o, it says nothing about who has the right to bring suit to hold responsible parties liable under §§ 1681n and 1681o.  Our reading of § 1681m(h)(8) has no effect on [the defendant's] potential liability for violations of § 1681m. [The defendant] can still be held liable for any violation, but only by the federal agencies and officials identified in 15 U.S.C. § 1681s.
>
> *Id*. at 823.
>
> . . .
>
> In sum, the Supreme Court "ha[s] stated time and again ... courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first

canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 461–62 (2002); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 125 S. Ct. 2611, 2626 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.").

This Court agrees with the overwhelming weight of authority holding that the phrase "this section" in § 1681m(h)(8) refers to section 1681m in its entirety, and thus no private right of action to enforce section 1681m exists.

*Id.*

I agree with the Eastern District of Virginia's well-reasoned decision in *Bourdelais* and relect that articulated by the court in *Barnette*.  Thus, the undisputed evidence shows that Defendants did not base their actions on Plaintiff's credit report, and there no longer is a private cause of action for a violation of § 1681m.  Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's FCRA claim.  *See* Fed. R. Civ. P. 56(a).

### B.    MCPA Violation (Count VI)

The MCPA provides that "'a person may not engage in any unfair or deceptive trade practice,'" such as a "false or misleading statement[]," in relation to "'[t]he extension of consumer credit' or the 'collection of consumer debts.'"  *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013) (quoting Com. Law § 13-303). "To prevail on [an] MCPA claim, [a plaintiff] must prove (1) an unfair or deceptive practice or misrepresentation that (2) was relied upon, and (3) caused him [or her] actual injury." *Brooks v. Mortgage Investors Corp.*, No. WDQ-13-1566, 2015 WL 926123, at *3 (D. Md. Mar. 3, 2015) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)); Md. Code. Ann., Com. Law § 13–408 (providing for a private cause of action)).

The crux of Defendants' summary judgment argument is that their so-called misleading statements simply did not mislead Plaintiff, such that she cannot show that she relied upon any misrepresentation. Defs.' Mem. 12–18. Specifically, they argue that "[t]he undisputed evidence shows that, in fact, Ms. Sterling understood that the purchase of the vehicle was contingent upon her being approved for financing." *Id.* at 12. They also contend that "[t]here is no statement attributable to any individual Defendant or to Ourisman that mislead the Plaintiff into paying the 'Defendants more money,'" and, in the end, she did not pay them any money at all. *Id.* at 18. Plaintiff insists that, even if she "understood that the purchase was contingent on financing, . . . Defendants' statements are still considered unfair or deceptive under the objective standard of the MCPA." Pl.'s Opp'n 15 (citing Com. Law § 13-302).

Certainly, an MCPA violation can be proven without proof of reliance. *See* Com. Law. § 13-302. But, this is true only where the Consumer Protection Division, rather than a private citizen, investigates businesses that might be engaging in "unfair and deceptive trade practice[s]," issues "cease and desist order[s]" to offending businesses, and works "to protect and promote the welfare of consumers." Com. Law. § 13-204. In contrast, a citizen must prove reliance to prevail on an MCPA claim. *See Brooks*, 2015 WL 926123, at *3; *Consumer Prot. Div. v. Consumer Publ'g*, 501 A.2d 48, 72 (Md. 1985) ("Traditionally, to be entitled to restitution because of misrepresentation, the plaintiff must prove reliance on a material misrepresentation."). Thus, proof of an objectively misleading statement (without more) is not sufficient for a consumer to recover under the MCPA. *See Brooks*, 2015 WL 926123, at *3; *Consumer Publ'g*, 501 A.2d at 72; *see also Lloyd*, 916 A.2d at 277 ("[A] private party suing under the Consumer Protection Act must establish 'actual injury or loss,' . . . measured by the

amount the consumer spent or lost *as a result of his or her reliance on* the seller's misrepresentation.").

This is where Defendants contend that Plaintiff falls short, and Plaintiff fails to show otherwise. She does not identify any evidence that she relied on any of Defendants' statements. Rather, the undisputed evidence that Defendants identify shows that Plaintiff understood that the sale was not final until she obtained financing and that she had not obtained financing, such that she was not relying on any statement to the contrary when she stopped making payments on the car she traded in. *See* Sterling Dep. 122:16 – 123:15 (testifying that she "understood as part of the process there would be [an] application for financing with another company," that her "deal would be funded" if she "qualified for that financing," and that "if the financing didn't go through then the deal would be undone and the down payment and trade-in [she] had proposed would be returned to [her]"); *id.* at 127:15–22 (same); *id.* at 128:17–129:2 (same). Insofar as she was told she might "have to pay for the betterments to [her old] vehicle" and have "to buy it back," *id.* at 164:1 – 165:19, she did not take any action in reliance and ultimately paid nothing, *id.* Thus, Defendants have produced evidence that demonstrates that there is no dispute of material fact, and Plaintiff has not met her burden of showing otherwise. *See Celotex v. Catrett*, 477 U.S. 317 (1986). Therefore, Defendants are entitled to judgment as matter of law on Plaintiff's MCPA claim. *See Brooks*, 2015 WL 926123, at *3; *Consumer Publ'g*, 501 A.2d at 72; *Lloyd*, 916 A.2d at 277; Fed. R. Civ. P. 56(a).

### C.    Fraud (Count IX)

To succeed on a claim for fraud under Maryland law,

a plaintiff must prove by clear and convincing evidence that "(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of

defrauding the plaintiff, (4) *the plaintiff relied* on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation."

*White v. Kennedy Krieger Institute, Inc.*, 110 A.3d 724, 744 (Md. Ct. Spec. App. Feb. 26, 2015) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005) (emphasis in *White*). In Defendants' view, the undisputed evidence does not support any of these elements. Defs.' Mem. 22. With regard to the fourth element in particular, Defendants contend that "it is undisputed that there was no reliance on th[e] alleged statement" by Robert Ourisman to Plaintiff that "'once the $800 [deposit] cleared, the transaction would be final,'" as "Plaintiff's own, extensive testimony negates her initial allegation that, when she signed the 'contracts' to purchase the vehicle, she 'believed the sale was final.'" *Id*. at 22–23 (quoting Compl. ¶ 41; Mem. Op. 26 (citing Compl. ¶¶ 44–46, 166)).

Plaintiff counters that "facts alleged in the complaint, which Ms. Sterling declared under oath are true and correct to the best of her knowledge and understanding, clearly contain facts sufficient to permit a jury to find that the Defendants' actions satisfied the essential elements of a fraud claim." Pl.'s Opp'n 24 (citing Sterling Dep. 195:10). Certainly, in her Complaint, Plaintiff alleged that Robert Ourisman told her that "once the $800 [that she still owed toward her deposit] cleared, the transaction would be final," and that "Ms. Sterling left the Ourisman lot believing her purchase of the Equinox was final." Compl. ¶¶ 41, 46. And, in the deposition testimony that Plaintiff cites, after Defense counsel deposed Plaintiff, her own attorney posed one question and Ms. Sterling answered, as follows:

Q   Ms. Sterling, in the complaint that you filed in this case you stated various representations that were made to you during the course of this transaction and all of the representations -- or your allegation of those representations that were made to you by Ourisman's agents and employees are true and accurate to the best of your knowledge and understanding?

A   Yes.

Sterling Dep. 195:3–10.

Essentially, Plaintiff seeks to verify her Complaint through her deposition testimony. But, "'[a] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.'" *Mendez v. Nationwide Prop. & Cas. Ins. Co.*, 910 F. Supp. 2d 784, 788–90 (D. Md. Sept. 28, 2012) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). Because this "verification" follows Plaintiff's deposition testimony, it does not create a genuine issue of fact where her prior testimony is to the contrary. *See id.* Thus, it cannot negate Plaintiff's testimony that she understood that her purchase was not final. *See id.* Moreover, Plaintiff's adoption of the allegations in her Complaint regarding Defendants' representations does not create a triable issue of fact regarding her alleged reliance on these statements. As discussed previously, Plaintiff has not shown that she relied on any statement by Defendants that the sale was final, as the undisputed evidence demonstrates that she knew it was contingent on her approval for financing. Therefore, Defendants are entitled to judgment as matter of law on Plaintiff's fraud claim as well. *See White*, 110 A.3d at 744; Fed. R. Civ. P. 56(a).

**<u>ORDER</u>**

Accordingly, it is, this <u>8th</u> day of <u>May</u>, <u>2015</u>, hereby ORDERED that

1. Plaintiff's Motion to File Surreply, ECF No. 64, IS GRANTED;

2. Defendants' Motion for Summary Judgment, ECF No. 56, IS GRANTED; and

3.   The Clerk IS DIRECTED to CLOSE THIS CASE.


_____/S/_____
Paul W. Grimm
United States District Judge

lyb